## KLENK v. KNOBLE AND WIFE.

1. HOMESTEAD; *Wife need not join husband in conveying.*

 A wife has no interest in the homestead during her husband's life, nor vested right to a future interest, and her concurrence in its alienation is not necessary.

2. HUSBAND AND WIFE: *Parties: When wife may testify.*

 In an action against husband and wife to foreclose a mortgage on a homestead, the wife may defend to avoid foreclosure of dower, and as to this, may testify for herself, but not in aid of the defense of her husband.

3. HOMESTEAD: *Owner may prosecute his business on.*

 The owner of an actual homestead may transact any business on it he may deem necessary for the support of his family—may erect conveniences proper for the business, and occasionally rent out such portions of the premises as may be temporarily spared: or, he may contract its area by cutting off a portion and appropriating it to other than family uses.

4. SAME: *Mortgage of, under Constitution of* 1868: *Estoppel.*

 Where, during the life of the Constitution of 1868, a party has declared, in a mortgage of property, which he might claim as part of his home tead, that it was "no part or parcel of his homestead," he is estopped to afterwards assert to the contrary and avoid the mortgage, unless such estoppel would contravene the policy of the law by allowing him to denude himself, by the mortgage, of a necessary part of his homestead.

APPEAL from *Sebastian* Circuit Court.

Hon. JAMES A. YANTIS, Special Judge.

### STATEMENT.

In February, 1874, Klenk filed, in the Circuit Court at Fort Smith, his complaint in equity against Joseph Knoble and his wife, to foreclose a mortgage executed to him by Knoble, with relinquishment of dower by his wife, on the twenty-sixth day of September, 1871, on lot No. 6, and the

north-east half of lot No. 5, in block F, in Fort Smith, to secure the payment of a note of the same date, for $650, for borrowed money, payable two years after date, with 10 per cent. interest from date.

The defense to the action was, that the mortgaged property was a part of the family homestead, and, under the Constitution of 1868, could not be mortgaged for the debt for which the note was given, and the mortgage was, therefore, void; and the wife further pleaded that her relinquishment of dower was obtained by the frand and coercion of her husband.

Among other witnesses the wife was permitted to testify as to the homestead character and use of the property, and that she was induced to sign the relinquishment of dower by the fraud and coercion of her husband.

Upon the hearing, the Chancellor found, from the evidence, that the property was part of the homestead when the mortgage was executed, and dismissed the complaint as to the mortgage, and rendered a personal decree against Knoble for the amount of the debt and accrued interest, and cost.

· Klenk appealed.

The facts disclosed by the evidence as to the homestead character of the property sufficiently appear in the opinion.

*M. H. Sandels* for appellant.

I.· The homestead is "the *home* place, *the roof that shelters*," etc., and the land contiguous thereto which contributes to the family comforts and supplies the home wants of the family. It is the dwelling house and its appurtenances. 29 *Ark.*, 400.

The brewery building was never part of the homestead. 1 *Wash. Real Prop*, and 10 *Peters*, 25.

The homestead of any resident was exempt when "*select-ed by him.*" *Const.* 1868, *Art.* 12.

Conceding that the brewery (for argument), up to date of mortgage, *was* part of the homestead, as an appurtenance (10.*Peters*, *sup.*), the giving of the mortgage upon it, with the recitals therein contained, was *not* an agreement to waive exemptions (see cases cited in *Norris et al.* v. *Kidd*, 28 *Ark.*, 485), but a selection of the remainder of lots 4 and 5, upon which stood the dwelling house, etc., as the homestead, and the abandonment of the brewery. 1 *Wash. Real Prop.*

In this State no conveyance of the homestead right is necessary, because the homestead is not an estate in the land (29 *Ark.*, 407), and no further conveyance from the wife was necessary than the conveyance of real estate generally.

2. An estoppel is the preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, etc. 1 *Bouv. Law Dict.*, 541. A party is precluded from repudiating his representations, or denying his admissions. *Rawl. Cov. Tit.*, 407; 5 *Ohio*, 199. The recitals in a deed or bond, if certain and relevant, are conclusive. 2 *Smith's L. C.*, 673, '74, '75, '76; 4 *Peters*, 175; and *N. B.* 11 *Howard*, 294, 325; 3 *Wash. Real Prop.*, 68, 94, *et seq.*; 1 *Wash. Real Prop.*, 366; 11 *Ark.*, 675; 12 *Ark.*, 524 and 730; 30 *Ark.*, 230.

3. The wife's plea is *special non est factum.* 17 *Ark.*, 9, 71; 2 *Greenl. Ev.*, sec. 300; 32 *Ark.*, 327, and the *onus* is on her.

*Thomas Marcum*, for appellee:

*Art.* 12, *Sec.* 3, *Const.*, 1868, is self executing. *Frits* v. *Frits*, 327, and *Sec.* 2, *Ib.*, prohibits the encumbering of the homestead in any manner. For what constitutes a lot, see *Wassell* v. *Tunnah*, 25 *Ark.*, 101, and for definition of

homestead, *Tumlinson* v. *Sweeney*, 22 *Ark.*, 400 ; 24. *Ark.*, 155 ; *Thompson on Homesteads, Sec.*——

A married man cannot encumber his homestead. 27 *Ark.*, 648. A mortgage is invalid. *Harbison* v. *Vaughn*, 33 *Ark.*, and case cited. *Frits* v. *Frits, sup.*

A homestead, under one and the same permanent enclosure, may embrace the office of a lawyer, the shop of a mechanic, etc., etc., if the value does not exceed the amount prescribed by law. 1 *Wash. R. P.*, 335, *Sec.* 17–19 ; 58. *Ill.*, 425 ; 34 *Tex.*, 617 ; 30 *Ib.*, 440 ; *Thompson on Homestead, Sec.* 107, 120, 133 ; 74 *Ill.*, 202, and may be occupied for other purposes. *Sec.* 244, 245, *Freeman on Ex* ; *Greeley* v. *Scott*, 2. *Cent. Law Jour*, 361.

The provisions of the Constitution are for the *benefit* of the family, the wife and children solely. 29 *Ark.*, 280, and if the husband fail to assert his right the wife may claim it. 2 *Dill*, 45, 63, 92 ; *The Reporter, vol.* 6, *p.* 548 ; *Kerr* v. *South. P. Com'rs*. The wife only relinquished dower, did not join in the statement that the property formed no part of the homestead, and was not estopped, and having a substantive right to homestead, relinquishment of dower does not affect her right. *Thomp. on Home., Sec.* 42 *and* 555 ; *Rorer on Jud. sales, p.* 524.

The property mortgaged being his homestead, the husband cannot waive his right or release it or estop himself by false recitals. *Thomp. on H., Sec.* 42, 474 ; *Rorer Jud. sales*, 1424–5–6 *and* 1431–3–4 ; 29 *La. Ann*, 333, and other cases. Any such waiver is void as against public policy.

The consent and joinder of the wife was necessary. 47 *N. J.*, 375 ; 11 *Bush. (Ky.)*, 622 ; 1 *Nevada*, 568 ; *Rorer on Jud. sales, Sec.* 1393 ; 64 *Ill.*, 157 ; 10 *Bush. (Ky.)*, 276 ; 11 *Ib.*, 296.

The Constitution formed a part of the contract. 21 *Ark.*, 85, and even if Knobel was guilty of deception or false

representation, the property is protected.   *Thomp. on H.*,
*Sec.* 842 ; 15 *N. Y.*, 489.

The wife testified in her own behalf.   *Thomp. on H.*,
693–5–7–8, and her evidence was competent.

**1. Home-**
**stead:**
**Wife need**
**not join in**
**conveying**

EAKIN, J.   Defendant's wife joined in the mortgage, only
for the purpose of relinquishing dower.   She had no inter-
est in the homestead during her husband's life, nor vested
right to a future interest.   The courts regard the family only
in construing the law, and determining its policy.   The wife's
concurrence in the alienation of the homestead is not, in this
State, necessary.   Only confusion, on this point, arises from
considering decisions from those States, where, by Statute

**2. Hus-**
**band and**
**wife:**
**Parties:**
**When wife**
**may testi-**
**fy.**

it is.   She was entitled to defend to avoid preclusion of
dower, and *quoad hoc* might testify for herself, care being
taken to disregard it, so far as it might assist the defence
of the husband.   She failed to establish her defence, and,
for the rest, her testimony may go for nothing.

Passing by the interests of the wife, we are called to de-
termine, *First:*   Whether the lots in the mortgage were, in
fact, when it was made, a part of the homestead of defend-
ant Knobel ; and, *next:*   Whether, if so, they could be en-
cumbered in the manner attempted.

**3. Home-**
**stead:**
**Husband**
**may pros-**
**ecute bus-**
**iness on.**

The first is a question of fact.   It appears that the de-
fendant had resided, with his family, upon an enclosed par-
cel of ground in Ft. Smith, embracing the platted lots, lying
contiguous in one block, and that the whole enclosure was
at first used for family convenience.   It included, with the
residence, a small garden, stable and open space, all together
under $5,000 in value.   All these might, under the Consti-
tution of 1868, have been held as a homestead.   *Wassell v.*
v. *Tunnah*, 25 *Ark.*, 101.

It is certainly reasonable that the owner of such a home-
stead, after its character, as such, had been impressed by

residence and acts manifesting intention, should be allowed to transact any business upon it he might deem necessary for the support of his family, to erect conveniences proper for the business, and to, occasionally, rent out such portions of the premises as could be temporarily spared. It would very much neutralize the advantages of a homestead if these things could not be done. It would discourage industry and domestic thrift; and so it has been held by many authorities, to be found collected in the text books, that the character of homestead, once impressed, is not lost for any portion of it, by such uses, alone. It is certainly true, upon the other hand, and equally reasonable, that any one may, by acts equally indicative of intention, contract the area of his homestead, by cutting off a portion and appropriating it permanently to uses apart from his family conveniences. It is a matter of intention to be derived from the facts.

In this case, the owner, who was a stone mason, and also a brewer, had, before the mortgage, erected a brewing house and carried on the business upon the mortgaged portion of the premises, at intervals, from about the year 1857 to within two weeks of the date of the mortgage. During this period the brewery had been several times closed. There had been a cellar dug upon the same lot "for stowing away beer," which had been used also for storing milk and vegetables for family use. Defendant, Knoble, slept in the brewery, not, it seems, for want of room in his house, but on account of the business, and because he did not live pleasantly with his wife. The dwelling was wholly on the part of lot five, not mortgaged, and upon lot four, making, independently of the mortgaged premises, a front of seventy-five feet running back one hundred and forty. It consisted of two rooms and a kitchen. The family consisted of himself, wife and six or seven children. Plaintiff knew the family and the situation of the premises. There was also a

stable on the back end of lot six. The garden occupied the back ends of lots four and five. The defendants say, further, that the brewery was always considered a part of the homestead, and that the main dwelling was considered too small for the family.

Upon this evidence we think the Chancellor properly considered the character of the homestead, as impressed at the time of the mortgage upon all three of the lots. They might have been scheduled as such, against an execution, as was done in *Wassell's case*, (*supra*).

4. SAME: Mortgage of under constitution of 1868: Estoppel.

A more difficult question, and one entirely new, is presented by the use of the words in the mortgage, describing the lot and a half conveyed; "the same being the lots upon which the said Joseph Knoble now has a brewery, and *not a part or parcel of his homestead.*" By plain principles of law these words will estop the defendant from claiming the mortgaged lots as a part of his homestead, unless it should appear from the circumstances that such estoppel would contravene the policy of the law. Neither in law nor in equity is an estoppel allowed to have that effect—either to remove an incapacity depending on facts, or to establish conclusively a state of things without which the instrument would be invalid. The reason is too obvious to admit of question. The law might, otherwise, at times be evaded, or its policy defeated by a few strokes of the pen. The question then really is, conceding that the homestead, up to this time, embraced all, does this mortgage, executed under the circumstances, contravene any public policy or violate any law? Have the parties by force of an estoppel, attempted to do what otherwise they could not have done?

If so, the mortgage cannot be upheld. If not, it should be enforced.

The constitution of 1868, then in force, amongst other things, exempted as a homestead, in the hands of every

Klenk v. Knoble and Wife.

married man or head of a family " any lot in any city, town or village, with the dwelling and appurtenances thereon, owned and occupied by any resident of this State, and not exceeding the value of five thousand dollars ;" and provided further, that it should " not be encumbered in any manner while owned by him," except in certain cases not here in question.

Actual residence is a palpable thing of which every one must take notice, and any attempt by a lender to take, or a borrower to give a mortgage on an actual residence, must of necessity be an effort to evade the constitutional policy. It would be mere child's play to enable the lender to neutralize that, by exacting from the borrower a statement in the instrument, denying the character of the property, and then closing his mouth by an estoppel.

But this is not exactly, nor, indeed, substantially such a case. The defendant retained his dwelling-house, and a considerable amount of ground with it; seventy-five feet in front, running back one hundred and forty feet, to an alley. What he cut off constituted no part of his actual residence, although occasionally used for family convenience. The brewery-house and cellar had not been built with a view to domestic convenience. The head of the family slept there, mostly, but that is explained by the necessity of watching the brewerage, and by his disagreeable relations with his wife. The use of the cellar, for vegetables and milk, was not designed in its structure. It was for storing beer. There is no proof of the uses of the stable. It may have been to keep a horse for the business of the brewery, or it may have been for family purposes.

It is to be observed that the Constitution does not limit the *minimum* extent of the lot. The resident may make his homestead as small as he pleases, provided it be not so contracted as to show an intent to evade the law, by making it

*Minimum area not limited by constitution of 1868.*

20—37

too small for actual use as a homestead. This is a matter to be determined by a Chancellor, or a jury, on evidence. Provided he does not retain a homestead fairly reasonable in extent, with his actual residence upon it, there is nothing in the policy of the Constitution to prevent the owner from utilizing other portions of his property as a basis of credit—although he might, if so disposed, have held it all against execution. His design so to separate it, may be as fairly inferred from acts and circumstances, as was his orignal design to invest it with the homestead character.

. There is no mode prescribed by which he must declare his intention before encumbering the part separated. Why should he be burdened with the expense of first taking it out of the same enclosure, or running a cross fence? If he has a right to do the thing, he has the right to manifest his intention in his own way. It is the *doing* of the thing, not the *mode* of doing it, which contravenes the law, if it be contravened at all.

Some perplexity has arisen in our minds, from a class of cases in equity, arising under laws made for the protection of persons supposed to be under a pressure of undue influence from creditors or lenders. The general current of authority is, that they are not allowed, contemporaneously, with the loan or benefit, and by the same instrument given for security, to waive the. benefit of the protection. A familiar instance is the case of a note given, waiving all exemptions ; or a deed of trust, waiving the right to redeem, after sale, in those States where that right is given for a limited time by Statute. But those are all manifest efforts to elude laws, which throw a shield over an unfortunate class, who require to be protected against their own improvidence. In the case now in judgment, giving full effect to the mortgage, the defendant would still appear to be left in the possession of a fair and reasonable homestead—suitable

to his condition in life. This is all the constitution contemplated. The court can take notice of the general course of human affairs, and knows that a large number of homesteads, and tenement houses, in towns and cities, are upon areas much smaller than that reserved by the defendant, and make comfortable residences.

The result of the reasoning is, that one owning a lot in a town might, then, to any reasonable extent, have retained the whole of it as a homestead, if kept for family convenience or pleasure. But he was not required by any policy to retain forever, as part of his homestead, more of it than he might deem reasonably sufficient, and might determine to hold and use the balance as other property. He might manifest his intention in any sufficient way, without being driven to visible separation by walls. Any facts or circumstances showing a permanent design, may be considered. As it was a thing, in itself, which he might properly do, it would show no intent to evade the law to declare it in a mortgage of the property so divested of its homestead character. With this qualification that the amount retained must appear to be reasonable, and *bona fide*, and not colorable.

It appears to us that the Chancellor, under the circumstances shown, erred in holding the mortgage void as against public policy, and should have decreed a foreclosure.

Reverse the decree and remand the cause, with instructions to the court below to decree and execute a foreclosure, in accordance with this opinion and the practice in equity.