BERRY v. MEIR.

Opinion delivered January 18, 1902.

1.   HOMESTEAD—BUSINESS PROPERTY.—The owner of a town lot less than one-fourth of an acre in area may claim it exempt where he resides upon the south two-thirds of it, though he uses the remainder for a storehouse, which is separated by a fence from the dwelling house. (Page 131.)

2.   SAME—SEGREGATION OF PART.—The fact that the owner of a town lot, with his wife, mortgaged the south two-thirds of it to a building and loan association, and released their rights of homestead therein, does not indicate an intention not to claim the residue as part of their homestead. (Page 132.)

3.   SAME—INTENTION NOT TO CLAIM.—That a lot-owner conveyed the north third of it to his wife is no indication that he intended not to claim such part of the lot as belonging to the homestead. (Page 132.)

9

4.  SAME—ESTOPPEL.—Statements made by defendant to another than
    the plaintiff that the entire lot on which his dwelling stood was
    subject to his debts do not estop defendant from claiming the
    homestead as against plaintiff because (1) such statements were
    not made to plaintiff; (2) they do not amount to a waiver; and
    (3) if they did amount to a waiver, they would not be effectual
    unless the defendant's wife consented thereto. (Page 132.)

Appeal from Monroe Circuit Court.

GEORGE M. CHAPLINE, Judge.

Reversed.

STATEMENT BY THE COURT.

E. F. Berry, a negro merchant, is the owner of lot 3 in block
14 in the town of Clarendon, Arkansas. The lot is 75 feet by 125
feet in depth, and of the value of $900, including improvements.
He purchased the north third of the lot, upon which was a store-
house, before he was married. He afterwards purchased the south
two-thirds of the lot, built a residence on it, married and lived there
with his family. He built a barn and smoke house on the north
third of the lot, east of the store. A fence separated the residence
part of the lot from that upon which the store was located, and
there are gates from one lot to another. The store is used for his
own business and convenience.

E. F. Meir & Co. obtained a judgment against Berry, upon
which execution was issued and levied upon the lot in question.
Defendant thereupon gave notice, and filed with the clerk of the
court a list of his property, and claimed the lot as his homestead
and exempt. The clerk issued a supersedeas prohibiting the sale
of the lot, and Meir & Co. appealed to the circuit court. In that
court Meir & Co. filed a notice to quash the supersedeas as to the
storehouse and north third of the lot on the ground that the de-
fendant "held the same out to his creditors as a part of his assets,
and the same was a basis upon which credit was extended to him,
and it is therefore segregated, and liable to the judgments of the
plaintiffs."

On the trial of the motion to quash it was shown that various
other creditors had judgments against Berry on which executions
had been issued. Louis Solomon, a traveling salesman for Solomon
Brothers & Johnson, testified that Berry stated to him "that he
owned the dwelling and storehouse on lot 3, block 14, in

Clarendon, and said it was all liable for his debts," and that he sold Berry goods on credit because he said "the storehouse and goods were liable for his debts." A salesman for the house of Newman & Son testified to a similar statement made by Berry to him. It was shown that Berry assessed his property as "N. 1-2 lot 3, block 14, $250; S. 1-2 lot 3, block 14, $400;" and that he mortgaged the south two-thirds of the lot to the Cumberland Building & Loan Association of St. Louis, and in this mortgage he and his wife expressly "waived and conveyed all their rights of homestead in the land mortgaged." It was also shown that in the latter part of the year 1898 Berry conveyed the north one-third of the lot to his wife, the consideration being "love and affection." Berry testified in his own behalf, and said that he purchased and improved the lot for a home; that he conveyed a part of the lot to his wife because he had promised her to do so; that the whole lot and improvement were worth about $900, and that he claimed all of it as a homestead.

On this evidence the court found that the north part of the lot, upon which was the storehouse having 25 feet front and running 60 feet back, "had been separated by the defendant Berry from the remainder of his homestead lot, if it had ever been a part thereof, and put into his mercantile business as so much capital." He thereupon quashed the supersedeas as to that part of the lot, and authorized its sale under the execution. Berry appealed.

*C. F. Greenlee,* for appellant.

Appellant did not lose his right of homestead by erecting the storehouse on the south two-thirds of the lot. 37 Ark. 298.

*J. P. Lee, Parker & Parker,* and *M. J. Manning,* for appellees.

The declarations and acts of appellant amounted to a segregation of the storehouse from the rest of the homestead. 55 Ark. 126; 37 Ark. 298; 44 Ark. 474; 10 Pet. 25.

PER CURIAM. The question presented by this appeal is whether the storehouse owned by the appellant Berry is a part of his homestead. He is the owner of lot 3 of block 14 in the town of Clarendon, and resides with his family in a dwelling house on that lot, all of which he claims as a homestead. Certain of his creditors had an execution levied on the lot, and contended that the north part of it, on which the storehouse is located, is not a part of the

homestead, nor exempt from execution. Although this storehouse was used by the debtor himself in his own business, there are decisions by the courts of other states to the effect that such a storehouse, entirely separate from the residence of the owner, and not used as an appurtenance or convenience of the dwelling house, is not a part of the homestead. *In re Allen,* 78 Cal. 293. But a majority of the judges are of the opinion that this court is committed to a different view of the law. In *Gainus* v. *Cannon,* 42 Ark. 504, Mr. Justice Eakin, speaking for the court, said: "It is a strange and irrational idea sometimes advanced that a man ought to lose his homestead as soon as he attempts to make any part of it helpful in family expenses." To like effect, see remarks of the same judge in *Klenk* v. *Knoble,* 37 Ark. 298. This view of the law certainly works no injustice to the creditor where the value of the homestead, including the shop or store used for the business convenience of the owner, is small, as it is here, the whole being of the value of $900. Under these circumstances a majority of the judges are of the opinion that the execution defendant can hold the entire lot as a homestead, including that part occupied by his storehouse, unless he has done something to estop him from doing so.

After a careful reading of the transcript, we are all of the opinion that the evidence shows neither a waiver of this homestead right by appellant, nor anything to estop him from claiming such exemptions. The fact that he and his wife mortgaged the south two-thirds of the lot to a building and loan association, and released their rights of homestead in the land mortgaged, does not show that they claimed only the portion mortgaged as a homestead, for they had the right to mortgage all or any portion of the homestead. To our mind, this mortgage shows nothing beyond the fact that the part mortgaged was thought to be at least a part of the homestead. Whether it was all or only a part cannot be determined from the mortgage, which throws no light on that question. The deed to his wife of the north third of the lot shows that he intended to convey that portion of the lot to her, but it does not show that it was not a part of the homestead at that time. If it was a part of the homestead, and the deed left any interest still in him, it could still be protected from sale under execution as a part of the homestead. The statement of the appellant made to Louis Solomon, and also to Will Thomason, that "he owned the dwelling house and storehouse on lot 3, block 14, and that it was all liable for his debts," and by which statement they say they were induced to sell

him goods, cannot control the decision in this case. In the first place, these statements were not made to Meir & Co., the plaintiffs; and, if they had been, they did not amount to a waiver of the appellant's homestead rights. It is often the case that men, when contracting debts, express their determination to pay them by saying that all they have is subject to their debts, but this species of boasting does not estop or preclude them from afterwards claiming their homestead and exemption rights, if they choose to do so. It will be noticed that the statement alleged to have been made by the defendant was that the whole lot, including both the dwelling and storehouse, was liable for his debts. It did not therefore show any separation of the storehouse from the dwelling, for the statement puts both together. It was not an assertion that the storehouse was not a part of the homestead, but at most it was only a parol promise that he would not take advantage of the homestead laws. We doubt if, under any view of the law, it could be treated as a waiver or estoppel against the appellant; but, as the law does not now permit the husband to convey or mortgage his homestead unless his wife joins in the execution of such conveyance, the promise, if made, was of no effect, for his wife is not shown to have consented to it in any way.

The case of *Klenk* v. *Knoble*, 37 Ark. 298, upon which counsel for appellees rely, was very different from this, for the debtor in that case gave the creditor a mortgage, and in the description of the property used the following words: "The same being the lots upon which the said Joseph Knoble now has a brewery, and *not a part or parcel of the homestead.*"

As the debtor had still remaining, besides the lots mortgaged, a dwelling house and a lot 75 by 140 feet, and as the lot mortgaged (to quote the language of the decision), "constituted no part of his actual residence," the court held that the statement in the mortgage showed an intention to contract the area of his homestead, and estopped him from claiming the part mortgaged as a homestead against the mortgagee. This decision was made before the passage of the act making it necessary for the wife to join in conveyances of the homestead. But the appellant in this case executed no mortgage to the creditor, nor was it shown that either he or his wife had ever stated to the creditor, or anyone else, that this storehouse was not a part of the homestead. We find in the transcript nothing to estop him from claiming the whole of this lot as his homestead.

For the reasons stated, a majority of the judges are of the opinion that the defendant has the right to claim the entire lot as his homestead, and that the court erred in·quashing the supersedeas as to the part occupied by. the homestead. The judgment is therefore reversed, and the case remanded, with an order to overrule the motion to quash.

Riddick, J., (dissenting.) I fully concur in so much of the opinion as holds that the evidence in this case shows nothing to estop the execution defendant from claiming the storehouse and that portion of the lot on which it was located· as a part of the homestead. But whether this store and the land upon which it rested was in fact a part of the homestead is a different question, and in my opinion it was not. Our constitution requires that the homestead shall be "owned and occupied as a residence," and as this storehouse was not used as a residence, or as an outhouse in connection with the residence, and as a convenience to it, I think it was not exempt. The language of Mr. Justice Eakin in the cases referred to in the opinion of the court I admit is in conflict with this conclusion, but an examination of the cases will show that the question was not decided in either of those cases. In *Gainus* v. *Cannon,* 42 Ark. 504, the court held that the owner of a house used as a home could rent a part of it for the .purposes of a hotel without forfeiting the right to claim it as a homestead. That decision is in accordance with the usual rule that one who has a house actually used as a residence does not forfeit his homestead right by renting a part of it. To rent the.whole of it temporarily would not necessarily work a forfeiture when there was no intention to abandon it as a home. In that case the house held to be exempt was used and occupied as a residence. In the other case of *Klenk* v. *Knoble,* 37 Ark. 298, the court decided that under the facts proved the execution defendant was estopped to claim the building levied on by the creditors as a part of his homestead. The court, in other words, held that the building, under the facts proved, was not a part of the homestead, and the remarks of Mr. Justice Eakin on the point involved here must be treated as reflecting only his own views, for the question was not presented by the facts of that case. If we concede that the remarks of Mr. Justice Eakin in the cases cited were agreed to by the other learned judges on the bench at that time, they would still be only an expression of the opinion of judges on a question not before them for decision.

While such an opinion is entitled to due consideration, it cannot be regarded as a decision of the court, or binding upon us as a decision would be. Looking, then, at this matter as an unsettled question in this state, I do not think the conclusion of the court in this case is correct. I admit that under the facts here there is not much grounds for complaint, for the evidence shows that the whole property claimed as a homestead is not worth above $1,000. But, if this rule is to be applied to cases where the property used for business purposes is of great value, grave injustice may be done to creditors in this state; for to say that a debtor shall be allowed to hold exempt from claims of his creditors buildings of great value, erected for business purposes only, because erected on land claimed as a part of his homestead, would, it seems to me, do violence to the provision in our constitution which requires that the homestead shall be "owned and occupied as a residence." Const. 1874, art. 9, §§ 4, 5.

Under the rule applied in this case a cotton seed oil mill or other manufacturing plant worth $100,000, if erected on a rural homestead by the owner thereof, when the homestead did not cover more than 80 acres of land, could be claimed as a part of his homestead, and exempt; and so, in a city, a business house costing as much might be protected as a part of a homestead. I do not think that the framers of our constitution intended any such result.

If it be said that the constitution does not limit the value of a homestead when it does not exceed 80 acres in the county or one-quarter of an acre in a town or city, I should reply that this was because the intention was to exempt only the home in the country and the land attached when used for farming or some kindred purpose, and to exempt only the home in a town and the grounds and buildings used in connection with the dwelling. When limited to such uses and purposes, it would be seldom that the homestead exempted would be of disproportionate value. People in cities, not able to pay their debts, seldom invest large sums in expensive dwellings, and 80-acre farms are not usually worth over two or three thousand dollars. For this reason the fact that there is no limit to the value of the rural homestead not over 80 acres in extent, and none to an urban homestead not over a quarter of an acre in extent, rarely works injustice to the creditor, so long as it is confined to property owned and used as a dwelling. But the case is different if the debtor is allowed to erect on the land claimed as a homestead buildings of any character, and for any

purpose, and to hold them exempt from his creditors. The use of the property should be such as to notify the creditor of its homestead character; and when a store, factory or other building is used exclusively for business purposes, the creditor is not put on notice that it is a homestead, and it is unjust to him to allow such property to be claimed as exempt by the debtor. *Grosholz* v. *New-. man,* 21 Wall. 486; Thomp. Homesteads, § 102.

For these reasons, I do not think that a building in a town or city, separate from the dwelling, and erected and used exclusively for business purposes, can properly be called a part of the homestead, and I am therefore not able to agree to the decision in this case, being of the opinion that the decision of the circuit court that the storehouse of the debtor levied upon was not a part of the homestead and exempt from execution is correct, and should be affirmed.

Wood, J., concurred in the dissenting opinion.