In re Willie W. **GILES** and Robalene M. Giles, Debtors.

No. 3:10–bk–73024.

United States Bankruptcy Court, W.D. Arkansas, Harrison Division.

Jan. 6, 2011.

526

Claude R. Jones, Jones Law Office, Harrison, AR, for Debtors.

Jill R. Jacoway, Jacoway Law Firm, Fayetteville, AR, Trustee.

Charles Eric Vester, Matthews, Campbell & Rhoads, Rogers, AR, for Arvest Bank.

## ORDER

BEN T. BARRY, Bankruptcy Judge.

Before the Court is an Objection to Homestead Exemption filed by Arvest Bank [Arvest] on July 28, 2010. In its objection, Arvest alleged that the homestead exemption does not extend to a portion of the debtors' real property on which they had constructed four storage units because of a manifested intent to abandon that portion for business use. On August 17, 2010, the debtors filed a response stating that the total acreage being claimed as exempt, including that portion on which the storage units stand, had been previously impressed as a homestead and, therefore, retained that character. On November 30, 2010, the Court heard the objection and the response, and at the conclusion of the hearing took the matter under advisement. For the reasons stated below, the Court overrules Arvest's objection to the debtors' claimed homestead exemption.

### Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The fol-

lowing order constitutes finding of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

## Background

In 1999, the debtors built their residence on 10.63 acres of real property that they owned. The same year, the debtors also began the construction of four storage unit buildings on the property. Construction continued until the fourth building was completed in 2004. The debtors built the storage buildings with the intention of renting out storage units within the buildings in order to supplement their income and provide for their retirement. In addition, the debtors owned a convenience store called The Outpost at a separate location. The Outpost was collateral for a loan the debtors had obtained from Arvest. In 2005, facing financial difficulties with The Outpost, the debtors accepted an unsolicited offer to buy their home and 5 acres of the total 10.63 acres. After the sale, the debtors continued to own the remaining 5.63 acres on which the storage buildings were located. Willie Giles [Giles] testified that approximately half of the proceeds from the sale of their home and 5 acres was applied to their flagging business, and the remaining proceeds were reserved for building a new home on the 5.63 acres. The debtors lived in a double-wide trailer located on the grounds of The Outpost for approximately a year and a half. In 2007, the debtors moved back onto the 5.63 acres and began construction of their new home. Prior to moving into the new home, which was completed in 2008, the debtors lived in a portable camper and a detached garage Giles had built on the property in 2006.

On February 8, 2010, The Outpost was sold at a foreclosure sale after the debtors defaulted on their promissory note to Arvest. After the sale, an Order of Deficiency Judgment was entered against the debtors in the amount of $171,800.11 on May 26, 2010. On June 10, 2010, the debtors filed their joint, voluntary chapter 7 bankruptcy petition and claimed the 5.63 acres exempt pursuant to 11 U.S.C. § 522(b)(3) on their Schedule C.

The 5.63 acres are located on a gravel county road outside the city limits of Berryville, Arkansas. The property is accessed from the gravel county road by two driveways, one of which leads to the storage units, and the other to the debtors' house. A sign on the property advertises "Highway 143 Storage," provides the debtors' home phone number, and directs customers to the office in their garage, which is attached to the house. A line of trees or shrubs stands between the debtors' house and the storage units but does not form a solid barrier.

## Analysis

Residents of Arkansas who have the right to claim property exemptions in a bankruptcy proceeding pursuant to 11 U.S.C. § 522 may elect to use either Arkansas state exemptions as provided by the Arkansas Constitution and state laws or the federal exemptions as provided in 11 U.S.C. § 522(d). Ark.Code Ann. § 16–66–217 (Repl.2005). The debtors in the present case elected to use Arkansas exemptions and claimed a homestead exemption on their 5.63 acres of real property. In order to establish the right to claim a homestead exemption under Arkansas law, three elements must be met: "(1) the party claiming the exemption must be the head of a household or married; (2) the property must be occupied as a home; and (3) the party claiming the exemption must be a resident of the State of Arkansas." *In re Hunter*, 295 B.R. 882, 888 (Bankr. W.D.Ark.2003) (citing *Smith v. Webb (In*

re Webb), 121 B.R. 827, 829 (Bankr. E.D.Ark.1990)). "[A]ctual occupancy in good faith is essential to the impression of the homestead character." Bank of Sun Prairie v. Hovig, 218 F.Supp. 769, 780 (W.D.Ark.1963). Once property is impressed with the character of a homestead, there is a presumption that the homestead continues until abandoned. Hunter, 295 B.R. at 888 (citing City Nat'l Bank v. Johnson, 192 Ark. 945, 96 S.W.2d 482, 484 (1936)). The Arkansas Supreme Court has expressed that this presumption of the homestead right continues until the objecting party has "clearly shown that it has been abandoned." In re Jones, 193 B.R. 503, 507 (Bankr.E.D.Ark.1995). Whether abandonment has occurred is "almost, if not entirely, a question of intent." Id. The party objecting to a claimed homestead exemption has the burden of proof under Arkansas law. Id. at 506.

■ The debtors, who are husband and wife and life-long residents of Arkansas, argue that their property was impressed as their homestead at least as early as 1999 when they built their residence on the 10.63 acres. At the hearing, Giles testified that they built the house for their retirement, and that they moved into the home with the intent to live there for the remainder of their lives. There was no evidence to show that the debtors did not actually and in good faith occupy the property. Accordingly, the Court finds that the debtors impressed the 10.63 acres with the character of a homestead at least as early as 1999 when they occupied the property with the intention of making it their home.

■ Additionally, the Court finds that the debtors' subsequent sale of their home and 5 acres in 2005 did not change the homestead character of the remaining 5.63 acres because they intended to maintain the remaining property as their homestead

after the sale. Under Arkansas law, abandonment does not occur so long as the homestead owner has "a fixed and unqualified intention to preserve [the property] as a homestead and to return to it." Stewart v. Pritchard, 101 Ark. 101, 141 S.W. 505, 505 (1911). Continuous occupation is not required in order to preserve the character of a homestead. Jones, 193 B.R. at 507 (citing Vesper v. Woolsey, 231 Ark. 782, 332 S.W.2d 602, 605 (1960)). The debtors cited their financial troubles with The Outpost as the sole reason for selling 5 acres of their 10.63 acres, and they stated that their plan was always to build a new home on the remaining 5.63 acres. In addition, Giles testified that approximately half of the proceeds from the sale were reserved for the construction of a new home on the 5.63 acres. In 2007, after an absence of approximately a year and a half, the debtors returned to live on the property, and in 2008, they completed the construction of their new home, where they have since lived. The debtors' actions support Giles's testimony of their fixed and unqualified intent to return to the property.

■ Arvest does not dispute that the portion of the 5.63 acres on which the debtors' home stands is their homestead. However, Arvest argues that the debtors have manifested an intent to abandon the portion of the 5.63 acres on which the storage buildings are located by using that part of the property solely for business purposes. In support of this argument, Arvest asserts that several factors provide evidence of the debtors' abandonment: that the debtors planted a line of trees between their home and the storage buildings; that their house and the storage buildings have separate driveways; that the storage buildings are estimated to be worth substantially more than their home; and that the debtors do not maintain substantial control of the storage units be-

cause they do not retain keys for the units within the storage buildings that are rented out to third parties.

■ It is well-established by Arkansas case law that " '[o]ne does not lose his homestead by using part of it for business purposes.' " *In re Evans,* 190 B.R. 1015, 1019 (Bankr.E.D.Ark.1995) (quoting *Starr v. City Nat'l Bank,* 159 Ark. 409, 252 S.W. 356, 357 (1923)). However, Arkansas case law also recognizes that the owner of a homestead has the right to abandon a portion of the homestead for other purposes or uses such as business use: "[the owner] is not required ... to retain forever, as part of his homestead, more of it than he might deem reasonably sufficient, and might determine to hold and use the balance as other property." *Klenk v. Knoble,* 37 Ark. 298, 307 (1881). Intent to abandon a portion of the homestead for business purposes may be manifested in "any sufficient way" and "[a]ny facts or circumstances showing a permanent design, may be considered." *Id.* Arvest cites *Knoble,* as well as *Vestal v. Vestal,* 137 Ark. 309, 209 S.W. 273 (1919) and *In re Evans,* 190 B.R. 1015 (Bankr.E.D.Ark. 1995) in support of its argument that the debtors' use of the property for business purposes rather than "family conveniences" is proof of the debtors' intent to abandon that portion of the property from the homestead.

The present facts are distinguishable from the facts in both *Knoble* and *Vestal.* The homestead owners in each of those cases maintained a business on their homestead property and were found to have manifested their intent to abandon by clear and affirmative actions: in *Knoble,* the written terms of a mortgage expressly excepted from the homestead that part of the property used for business purposes; and in *Vestal,* the terms of a partnership agreement between a father and son allo-

cated a portion of the real property for use by the business, in combination with the later sale of the father's interest in the business to the son and the father's written and filed declaration of his homestead, which did not include the 5 acres used in the partnership business. While intent to abandon a portion of the homestead may be manifested in "any sufficient way," the Court has no clear indication that the debtors in the present case intended to abandon part of their homestead for business purposes like the owners did in *Knoble* and *Vestal.* The Court finds that it was the debtors' intent to retain the entire 5.63 acres as their homestead, and their use of the property for business purposes is not contrary to that intent or sufficient proof of abandonment. Neither the line of trees or shrubs nor the fact that the debtors' home and the storage units have separate driveways from the county road provides sufficient evidence of the debtors' manifested intent to abandon a portion of the homestead for business use. *Cf. Berry v. Meir,* 70 Ark. 129, 66 S.W. 439 (1902) (not considering the presence of a fence and gates separating the residence from a mercantile store in the Court's analysis of whether the owner manifested an intent to abandon a portion of the homestead for business use).

The present case is also distinguishable from the facts in the third case on which Arvest relies, *In re Evans.* There, the Bankruptcy Court for the Eastern District of Arkansas found that the debtors were not entitled to claim a homestead exemption for that part of the property on which their business operations were located for two reasons. First, the debtors manifested an intent to abandon that property from their homestead by constructing permanent buildings intended for strictly industrial/manufacturing purposes unrelated to "family" or "domestic convenience" pur-

poses. In reaching this finding, the court focused on the industrial/manufacturing nature of the business: the debtors' company, Arkansas Bus, was a closely-held corporation that built and refurbished buses and leased the buildings from the debtors. Arkansas Bus also claimed depreciation for the buildings on its tax returns. The buildings were constructed for the debtors' manufacturing business, which functioned as a corporate entity separate from the debtors. In addition, the buildings used for the debtors' business were valued at three times the value of the debtors' home. The court juxtaposed these facts with cases involving relatively small businesses of the "family type" and found that the industrial and permanent nature of the buildings manifested the debtors' intent to abandon that portion of the property for business purposes. *Evans*, 190 B.R. 1015, 1019–21 (Bankr. E.D.Ark.1995). Second, and unrelated to the theory of abandonment, the court determined that the property's characteristics and location made it urban, not rural, in nature. As such, the debtors were entitled to the urban homestead exemption of only one-fourth of an acre. Among the factors the court considered to determine that the property was urban was the debtors' access to city utilities, the commercial and industrial nature of businesses in the surrounding area, and the fact that the property was located six to eight feet outside the city limits of Pine Bluff, Arkansas. *Id.* at 1021–24. The court concluded that even if the debtors had not abandoned a portion of their homestead for industrial business purposes, they were not entitled to exempt the entire 2.8 acres.

In comparison to the debtors' industrial/manufacturing business in *Evans*, the debtors in the present case own and operate a relatively small, family-run and service-type business. The debtors own the storage buildings outright and constructed the buildings for their own business use rather than for the use of a third-party corporation. They have no employees and they see to the daily routine of running the business. The sign on their property gives their home phone number and directs customers to the office in the garage that is attached to their home. Giles testified that he walks from the house each morning and evening to open and close the gate to the driveway for the storage units, and he and his wife oversee the signing of rental contracts. Though the debtors do not retain keys for the rented units for liability reasons, the debtors otherwise maintain control of their property and the business which they run upon it. In addition, the income from the storage buildings is used for their family's purposes. Arvest argues that, like in *Evans,* the debtors' storage buildings have substantial value that exceeds the value of their home. However, Arvest's valuation evidence shows that the estimated value of the storage buildings is approximately one and one-third times greater than the estimated value of the debtors' home. In contrast, the business buildings in *Evans* were worth three times the value of the debtors' home. Finally, the Court is satisfied that the 5.63 acres in question are rural rather than urban in nature. Ray Fletcher, a real estate appraiser, testified that the property is approximately 5 to 6 miles outside the city limits of Berryville, accessible only from a gravel road, and adjacent to agricultural property. While there are other homes nearby, the debtors do not have access to city utilities.

▮ From the evidence before it, the Court finds that the debtors did not manifest an intent to abandon a portion of their 5.63 acre homestead by using it for business purposes. Arvest, as the objecting party, did not meet its burden of "clearly showing" that the homestead was aban-

doned. Abandonment is a question almost entirely of intent, and the debtors' testimony, in addition to the nature of the debtors' relatively small, family-type business, supports the Court's conclusion. In finding that the debtors have the right to claim a homestead exemption on the entire 5.63 acres under Arkansas law, the Court is following a substantial body of Arkansas case law that supports a person's right to use a portion of the homestead for business purposes in order to contribute to household income.[1] As the Arkansas Supreme Court stated over 125 years ago,

> It is a strange and irrational idea, sometimes advanced, that a man ought to lose his homestead as soon as he attempts to make any part of it subservient to a trade or occupation, or to make it helpful in family expenses. Homestead laws are liberally construed.... It is the policy of the State to encourage every freeman to the exercise of industry, thrift, and good management of his resources; and within a limited area to make it as valuable as possible. It makes better citizens, and increases the taxable wealth of the body politic.

*Gainus v. Cannon,* 42 Ark. 503, 515 (1884). The policy of encouraging one to use one's homestead to generate income is as applicable today as it was in 1884, as is the tenet that homestead laws are to be liberally construed. To find that the debtors' use of a portion of their claimed homestead to operate a small, family-owned business constitutes abandonment of that portion of that homestead would be contrary to Ar-

kansas law with respect to homestead exemptions.

## Conclusion

For these reasons, the Court finds that the debtors' 5.63 acres, including their residence and four storage buildings, constitute their homestead under Arkansas law. Accordingly, the Court overrules Arvest's objection to the debtors' claimed homestead exemption.

IT IS SO ORDERED.

---

1. *See, e.g., King v. Sweatt,* 115 F.Supp. 215 (W.D.Ark.1953) (finding that "Furniture Mart" building was part of the homestead that included the home and a Tourist Court); *Jordan v. Jordan,* 217 Ark. 30, 228 S.W.2d 636 (1950) (finding that entire city lot, including the home and a machine shop that was later used as warehouse, constituted the homestead); *Starr v. City Nat'l Bank,* 159 Ark. 409, 252 S.W. 356 (1923) (finding that a poultry house built for business purposes did not change the character of homestead property); *Berry v. Meir,* 70 Ark. 129, 66 S.W. 439 (1902) (finding that entire city lot, including a portion on which the defendant first conducted his mercantile business and a portion which he later bought and built his home upon, constituted the homestead).