BROWN *v.* PEOPLE'S BANK OF SEARCY.

Opinion delivered October 31, 1921.

HOMESTEAD—ABANDONMENT.—Where a debtor left his homestead for five years, and acquired another home in another town, and continuously offered his former homestead for sale, a finding that he had abandoned the former homestead will be sustained.

Appeal from White Chancery Court, *J. E. Martineau,* Chancellor; affirmed.

*Emmet Vaughan,* for appellant.

Creditors have no lien upon a homestead for the satisfaction of their debts, and they are not concerned in its sale or transfer, whether fraudulent or otherwise. 43 Ark. 429; 33 Ark. 454; 52 Ark. 101; 52 Ark. 493; 56 Ark. 156; 56 Ark. 253; 57 Ark. 242; 66 Ark. 382; 65 Ark. 373; 70 Ark. 69.

A homestead will not be considered abandoned on account of the owner removing from it temporarily, when it is his intention to return to it. 38 Ark. 539; 37 Ark. 283; 55 Ark. 55; 56 Ark. 621; 219 S. W. 30. An effort to sell a homestead does not show an abandoment. *Spurlock* v. *Gaikens,* 146 Ark. 50.

*Brundidge & Neelly,* for appellee.

If, at the time of the removal, there is no present or constant and abiding intention to return and preserve the homestead character, then such removal will constitute an abandonment of the homestead. 137 Ark. 240; 134 Ark. 202; 13 R. C. L. p. 659. It has been five years since appellant left his home, and he has not returned there yet.

SMITH, J.   On the 18th day of January, 1916, the
People's Bank of Searcy recovered a judgment against
H. L. Brown in the sum of $4,500.   An execution
issued on said judgment and was levied on lots 10, 11
and 12, in block 30, of the city of Searcy.   Sometime
prior to the issuance of the execution, Brown had moved
from his home on the above-described lots to Des Arc,
and had rented his home to one McCain.   He claimed
the property as exempt, and that claim was sustained
by this court in the case of *People's Bank of Searcy v.
Brown,* 136 Ark. 517.   The opinion in that case was de-
livered May 6th, 1918.

On September 3, 1918, another execution was issued
and levied on the above-described property, but the
property was erroneously described in the sheriff's re-
turn, in the notice of sale, and in the certificate of pur-
chase, as being lots 10, 11 and 12, in block 27, although
the levy was actually made on the lots belonging to
Brown.

The bank brought suit in equity, in which the facts
above recited were alleged.   It was further alleged that
on October 29, 1918, Brown had pretended to convey
the lots to W. M. Bell, but that no consideration had
passed from Bell to Brown, and that said conveyance
had been made to hinder and delay the bank in the col-
lection of its judgment.   That Brown was insolvent, and
Bell was holding the title for Brown's benefit.

There was a prayer that the sheriff's return and
certificate of purchase be corrected to read block 30, in-
stead of block 27, and that the deed to Bell be canceled.

In his answer Brown denied the allegation stated,
and alleged the fact to be that said lots had at all times
been his homestead until the sale thereof to Bell.   This
answer was adopted by Bell as his own.

The court found the fact to be as alleged in the
bank's complaint, and made a specific finding that
Brown had abandoned his homestead, and that the con-

veyance to Bell was in fraud of his creditors. The court canceled the deed to Bell and ordered the property sold, and this appeal is from that decree.

The examination and the cross-examination of Bell makes it reasonably certain that the deed to him was without consideration; and, in support of the validity of the deed, it is chiefly insisted that, as it was a conveyance of a homestead, no creditor had the right to complain.

The controlling question in the case is whether there had been an abandonment of the homestead prior to the levy of the execution; and we have concluded, upon a careful consideration of the testimony, that the finding of the court that there had been an abandonment is not clearly against the preponderance of the evidence.

The testimony upon which that finding was made is to the following effect: Brown left Searcy in 1915, and did not thereafter at any time reside in Searcy. After leaving Searcy, he immediately and continuously offered the lots for sale. On his direct examination as a witness Brown testified that before his sale to Bell he had already bought a home in the town of Des Arc. On his cross-examination he stated that his wife had bought the home, and that after his sale to Bell, and out of the proceeds of that sale, he had paid his wife back the money she had paid for the Des Arc home. But, as has been said, the examination of Bell and his answers to questions as to the amount paid by him, where he obtained the money, and how he paid it, makes it reasonably certain that Bell paid Brown no money, and that the deed to him was not *bona fide*. Brown explained his action in buying the home from his wife, after she had bought it and paid for it and had taken the deed in her own name, by saying that he found it unpleasant to live in a home owned by his wife.

It is true, as is insisted by counsel for Brown, that Brown's offer of his home for sale did not, of itself, constitute an abandonment thereof, and it is also true that his own testimony shows he had no such intention; but we think the facts stated herein, with the inferences

reasonably deducible therefrom, warranted the court in rejecting this statement and support the finding that he had in fact abandoned the Searcy home, and that it thereupon became subject to sale in satisfaction of the judgment against him. This being true, it follows that the conveyance of it, made in fraud of creditors, was properly set aside. Decree affirmed.