## HARRIS *v*. RAY.

### Opinion delivered March 3, 1913.

1. APPEAL AND ERROR—FINDING BY CIRCUIT COURT—CONCLUSIVENESS.— A finding of fact by the circuit court, will not be disturbed if supported by legally sufficient evidence, even though the finding appears to be against the preponderance of the evidence. (Page 283.)

2. HOMESTEAD—ABANDONMENT.—When land has been impressed by appellee with the character of a homestead, she does not abandon the same when she marries and moves to another State, when it appears that her removal was only temporary and that she intended to return to the homestead. (Page 284.)

3. HOMESTEAD—ABANDONMENT.—A temporary removal from a homestead, once impressed as such, does not constitute an abandonment, even though the party exercises the rights of citizenship in another State. (Page 284.)

4. HOMESTEAD—MARRIED WOMAN—CHANGE OF DOMICILE.—A married woman does not abandon her homestead in Arkansas by a temporary removal with her husband to reside with him in another State, even though the domicile of the wife follows that of her husband. (Page 285.)

Appeal from Randolph Circuit Court; *J. W. Weeks*, Judge; affirmed.

*T. W. Campbell*, for appellant.

The effect of one's acts can not be defeated by an undisclosed purpose at variance with them. 2 L. R. A. 106; 101 N. C. 311.

A change of residence clearly manifested as a matter of law by acts can not be defeated by a subsequent declaration of the person that he did not intend his acts to have that effect. 101 N. C. 311.

The right of exemption of a homestead from sale under execution appertains only to residents of this State. Kirby's Digest, § 3898; 34 Ark. 111; 53 Ark. 182; 41 Ark. 249; 19 Tex. 275; 44 Ind. 269; 23 Cal. 108.

Appellee's husband's domicile was in Oklahoma and in law she must be deemed a resident of that State so long as her husband's home remained there. 29 Ark. 280; 49 L. R. A. 138; 42 S. W. 185. Being a non-resident of this State she is not entitled to a homestead exemption here. 43 N. H. 307; 13 Mass. 501; 27 Miss. 704; 12 Cal. 327; 20 Ala. 629; Story on Conflict of Laws, § 46; 58 Iowa 406; 10 N. W. 804.

*McCaleb & Reeder* and *C. H. Henderson*, for appellee.

As the question of residence is largely one of intention a debtor who is preparing to remove from the State may still be a resident of the State and entitled to her exemptions. 100 Ark. 540.

For removal from the homestead to be an abandonment there must be an intent not to return, and where the intent not to return has not been formed the homestead character is not destroyed, though another home has been acquired. 128 S. W. 699; 55 Ark. 55. Where a lessor leases his homestead and reserves the right to return, and it is his intention to do so, there is no abandonment. 48 Ark. 539. Continuous occupation is not necessary to preserve the homestead right. 37 Ark. 283; 56 Ark. 589; 66 Ark. 382.

Where it appears from the evidence that the premises had been occupied by the debtor as a homestead, the burden is on the execution creditor to show both removal therefrom and intentional abandonment. 62 Neb. 227; 71 Kan. 665.

Where the facts establish a homestead right it will be presumed to continue until the contrary is shown. 97 Tex. 137.

McCULLOCH, C. J. The controversy in this case arises over the right of appellee to claim a homestead in Randolph County, Arkansas, from sale under execu-

tion in appellant's favor. The circuit court decided the issue of fact in appellee's favor upon conflicting testimony, and if the finding of the court is supported by legally sufficient evidence it is our duty not to disturb it, even though the finding appears to us to be against the preponderance of the evidence. *Robinson* v. *Swearingen,* 55 Ark. 55; *Gazola* v. *Savage,* 80 Ark. 249.

Appellee was a widow and occupied as her homestead a tract of land in Randolph County, in which she owned a life estate, conveyed to her many years ago by her father. In January, 1911, she intermarried with George Ray, who was a railroad conductor and resided in Oklahoma, where he had been for five or six years. Ray formerly lived in Arkansas, at different points, and afterwards moved to Texas, and thence to Oklahoma, being a railroad man during all that time. Appellee went to Oklahoma with her husband, and leased the tract of land in controversy for a limited period. She left some of her personal property in Randolph County, and testified in this case that she left with the intention of returning and occupying the homestead. During the few months she remained in Oklahoma an application was made to her to sell the place, which she declined to do, the testimony tending to show that her husband acquiesced in this purpose and intended to sell his property in Oklahoma and return to Arkansas with his wife.

The judgment in appellant's favor was rendered in July, 1911, and execution was sued out and levied on this land a short time thereafter. In November, 1911, appellee returned to Arkansas and again occupied the homestead.

It is undisputed that the tract of land in controversy had been impressed by appellee with the character of a homestead and that she occupied it until the time she intermarried with Ray and removed with him to Oklahoma. She claims that her removal was only for a temporary purpose and that she intended to return.

Appellant adduced testimony tending to establish the fact that appellee had no intention of returning to

Arkansas and so declared herself to her neighbors and friends.

The question presented is, whether or not the evidence is sufficient to warrant the finding that there was no abandonment of the homestead.

Numerous decisions of this court establish thoroughly the principle that a temporary removal from a homestead, once impressed as such, does not constitute an abandonment. *Euper* v. *Alkire,* 37 Ark. 283; *Robinson* v. *Swearingen,* 55 Ark. 55; *Gates* v. *Steele,* 48 Ark. 539; *Robson* v. *Hough,* 56 Ark. 621; *Gazola* v. *Savage,* 80 Ark. 249; *Gebhart* v. *Merchant,* 84 Ark. 359.

Our conclusion is that the evidence is sufficient for the purpose of showing there was no abandonment of the homestead. It is unnecessary to enumerate all the facts and circumstances which can be regarded as supporting the finding; but giving it its strongest probative force in appelles favor it is legally sufficient, we think, to support the finding of the trial judge.

It is contended by counsel for appellant that appellee's intermarriage with a man who lived in another State *ipso facto* operated as an abandonment of the homestead merely for the reason that her legal domicile followed that of her husband.

It is true that in law the domocile of the wife follows that of the husband. *Johnston* v. *Turner,* 29 Ark. 280; *Hairston* v. *Hairston,* 27 Miss. 704; Story on Conflict of Laws, § 46. But this does not necessarily result in a holding that, regardless of the intention of the parties, the homestead must be treated as abandoned. The Constitution of this State confers homestead rights upon a *resident* of the State who is a married person *or* the head of a family, and when a homestead is acquired by a resident, temporary absence, even in another State, does not work an abandonment. Even where one exercises, during the time of temporary absence from the homestead, the rights of citizenship at another place, such as voting, this does not necessarily imply an abandonment of the homestead. In other words, where an actual res-

ident of this State acquires a homestead here, the mere exercise of acts of citizenship in another State while temporarily absent from the homestead does not necessarily amount to an abandonment, though it may be considered strong evidence of such abandonment. *Rand Lumber Co.* v. *Atkins,* 116 Iowa 242; *Cincinnati Leaf Tobacco Warehouse Co.* v. *Thompson,* 105 Ky. 627; *Minnesota Stoneware Co.* v. *McCrossen,* 110 Wis, 316; *Corey* v. *Schuster,* 44 Neb. 269; *Myers* v. *Elliott,* 101 Ill. App. 86. Even though the legal domicile of the wife follows that of the husband to another State, if she continues to reside upon the homestead or leaves it for a temporary purpose with intention to return, there is no abandonment.

Of course, there is no presumption that the wife will desert her husband and choose to return to the homestead without him, and if the evidence was clear that there was no intention on the part of the husband to return, that would negative any intention on the part of the wife to return. The evidence in this case does not, however, show that there was no intention on the part of the husband to join the wife in her return to her homestead after a temporary absence. There is some evidence to the contrary, and we are of the opinion that the court was warranted in finding that there was a *bona fide* intention on the part of the appellee to return to her homestead with her husband after a temporary absence and re-occupy it as her home. This being true, the court was warranted in its finding that there was no abandonment of the homestead. The judgment is therefore affirmed.