BUNTING v. ROLLINS.

4-3424

Opinion delivered April 2, 1934.

*Nat T. Dyer,* for appellant.
*H. J. Denton,* for appellee.

MEHAFFY, J.  Jesse J. Bunting and Mary M. Bunting, his wife, the appellant here, became the owners of the land involved in this suit, and other lands, with the right of survivorship.  During the lifetime of the husband on July 2, 1930, the appellant and her husband executed a mortgage to W. J. Bennett, conveying to him lands on the southwest side of the highway shown on the diagram, to secure the payment of an indebtedness of $2,500.

On September 19, 1930, Jesse J. Bunting died, and the appellant thereupon became the owner of all the real estate in her own right. On July 2, 1931, the appellant entered into the following contract:

"Mountain Home, Ark., July 2, 1931.

"This contract entered into on this the 2d day of July, 1931, by and between Mrs. J. J. Bunting and L. Harry Carpenter, and Mary E. Carpenter, hereinafterwards known as part of the first and second part respectively, witnesseth:

"That the party of the first part has sold to the party of the second part a certain tract of land, situated in Baxter County, Arkansas, and fully described in deed hereto attached and made a part of this contract, containing 76 acres of land.

"The contract price of land being four thousand dollars, paid and to be paid as follows: $200 in cash, the receipt of which is hereby acknowledged, and the balance of $3,800 in the 19 promissory notes of $200 each, the first one of which is to be due on or before November 1, 1932, and one of each of the remaining notes to become due on or before November 1 each year thereafter, making the last note due on or before November 1, 1950. All of said notes are to be of even date herewith and to draw interest at the rate of 6 per cent. from date until paid, interest on all notes to be paid annually.

"The party of the first part is to furnish a warranty deed to said land and place same in the Farmers' & Merchants' Bank of Mountain Home, Arkansas, and, when one-half of the above-mentioned notes are paid, is to make an abstract of title to said land, showing a good

title to same, free of all debts and incumbrances, and the bank at that time is to deliver to the party of the second part the deed and abstract, taking a lien on the land for all notes unpaid at that time.

"The party of the first part is to have the crop growing on the land for the year 1931 and is to give possession of the land on or before November 1, 1931, with the understanding that, if all the crop is not ready to gather at that time, she is to have a reasonable time to get same off.

"It is further understood that the party of the second part is to keep the house on said land insured, in some good insurance company, for not less than $750 after they take possession.

"The Farmers' & Merchants' Bank of Mountain Home, Arkansas, is hereby made escrow agent in said deal, and all papers above mentioned is to be placed in same, with instructions that when the terms of this contract is complied with, it is to deliver all of above papers in keeping with this contract. Should the party of the second part fail or refuse to make payments as above set out, then in that event the said bank is hereby authorized to return the deed and abstract to the party of the first part and all unpaid notes to party of second part, and all payments made shall be the property of the first party for rents and damages, and this contract shall become null and void.

"[Signed] Mrs. J. J. Bunting

"L. Harry Carpenter

"Mary E. Carpenter."

On September 12, 1932, the appellee obtained judgment in the Baxter Circuit Court against the appellant for the sum of $310.65. On October 15, 1932, execution was issued on said judgment, and placed in the hands of the sheriff of Baxter County for levy and sale. The sheriff levied upon the personal property and on the real property north and east of the public highway, as shown on the diagram, and 6.5 acres southwest of the public highway.

On October 31, 1932, the appellant gave notice that she would, on November 7, file her schedule of exemptions before the clerk of the Baxter Circuit Court. She filed said schedule at the time mentioned, and then on November 13th filed an amended schedule, and the appellee thereupon applied to the clerk for the appointment of a board of appraisers. Certain appraisers were selected by agreement, and they fixed the value of the personal property at $890.50, whereas the appellant, in her schedule had fixed the value of the property at $419.80. The appraisers fixed the value of the real property as follows: All that part of the land shown in the diagram north and east of the highway, and the four acres also claimed as exempt, on the southwest side of the highway, at $3,500. The clerk allowed the exemptions as claimed by appellant and issued supersedeas. The appellee prosecuted an appeal to the circuit court, and the circuit court allowed the exemptions as to the personal property, but disallowed appellant's claim for exemptions as to the real estate, and quashed the supersedeas as to the real estate. To reverse this order of the circuit court disallowing exemptions as to real estate, this appeal is prosecuted.

As to the personal property, but little need be said. The appellant was entitled to claim as exempt personal property not exceeding in value the sum of $500. Article 9, § 2, Constitution of Arkansas; § 5545 of Crawford & Moses' Digest.

The only question as to the personal property was its value, and, as we have already said, the appellant fixed the value at $419.80, and the appraisers fixed the value at $890.50. It appears, however, from the evidence that the appraisers placed the full value on articles selected without any regard to the amount of interest of appellant. The record shows that appellant had purchased certain property from Montgomery Ward & Company for $140, and had paid only $10. The appraisers fixed the value of this property at $140. Montgomery Ward & Company had retained title to the property, and therefore appellant had only $10 equity in the property. The same appears to be true with reference to

the automobile. Appellant fixed the value of the automobile at $150, but showed that there was a $300 mortgage. The appraisers fixed the value at $450 without taking into consideration the mortgage. It appears therefore that the value fixed by the appellant was correct. At any rate, this was a question of fact to be determined by the evidence, and the finding of the lower court is conclusive here.

Appellant was entitled to claim the real property described in her schedule as exempt unless she had abandoned it, and this is the only question for our determination with reference to the real property.

Article 9 of § 4 of the Constitution provides that the homestead outside of a city, town or village shall consist of not exceeding 160 acres of land with the improvements thereon to be selected by the owner, provided the same shall not exceed in value the sum of $2,500, and in no event shall the homestead be reduced to less than 80 acres without regard to value. This section of the Constitution is copied as § 5540 of Crawford & Moses' Digest.

This land, claimed as exempt as a homestead, being worth more than $2,500, prevented her from claiming more than 80 acres. The evidence shows that she thought she could claim the entire tract. She was advised by her attorney, however, that she could only claim 80 acres, and then filed her amended schedule, claiming the 76 acres northeast of the public highway, and 4 acres southwest of the highway. The following diagram or map shows the situation of the land:

the 76 acres northeast of the highway and the 4 acres southwest of the highway are the lands claimed as homestead. The land shown southwest of the highway was mortgaged to secure a debt of $2,500. The 76 acres and the 4 acres are the tract claimed as the homestead.

The appellant and her husband lived on the 4 acres southwest of the highway during the husband's lifetime, and appellant continued to live there after his death. She, however, claimed the entire tract of land as her homestead. She had made the above contract to sell the land, and it is claimed by appellee that, having done this, she cannot claim the land northeast of the highway as a homestead, because, after the contract of sale and before it was forfeited, execution was issued on the judgment against her.

Whether a homestead has been abandoned is a question of intent to be determined from the facts and circumstances in each case. *Creekmore* v. *Scott,* 179 Ark. 1113, 20 S. W. (2d) 177.

The facts in this case are that in 1930, prior to the death of appellant's husband, they executed a mortgage on all the land southwest of the highway to secure the payment of an indebtedness of $2,500. This debt has not been paid. It is entirely probable that, because of the depression and the decreased value of all lands in the country, it would not sell for enough to pay the indebtedness. The statement of facts shows that appellant and her husband claimed the entire tract of land shown in the diagram as their homestead, and that she claimed it as her homestead after his death. The only land that she had that was not mortgaged was the land northeast of the highway. It is agreed that she thought that was a part of her homestead, and she entered into a contract for a conditional sale of that property, and received in cash $200. She did not convey any title and did not intend to do so, unless and until one-half of the amount was paid, and the contract expressly provided: ''Should the party of the second part fail or refuse to make payments as above set out, then in that event the said bank is hereby authorized to return the deed and abstract to the party

of the first part, and all unpaid notes to the party of the second part, and all payments made shall be the property of the first party for rents and damages, and this contract shall become null and void."

This court said: "The relation that thus was created and arose between the parties sprung from the contract, and began with its execution, whether it was that of vendor and vendee or of landlord and tenant. The exact nature of the relation that would exist was determined on December 1, the date of the performance or nonperformance of the condition, but the inception of that relation arose at the date of the making of the contract. So that when, by the performance or nonperformance of the condition, the relation between the parties was determined, that relation went back to the time of the execution of the contract and continued thereafter." *Murphy* v. *Myar,* 95 Ark. 32, 128 S. W. 359.

In the instant case the relation was created by contract. The exact nature of the relation was determined when the purchasers failed to pay the first note. The contract itself expressly provides that it shall be void if there is a failure to pay the note. While the relation was determined upon the default of the purchasers, the inception of that relation arose at the date of making the contract. There never was any absolute conveyance of this property. On the default of the purchasers, they became tenants of the appellant, and, since the relation was determined by the default of the purchasers, and that relation related back to the time of making the contract, there was never a time when a lien would attach to the homestead property, and there was no abandonment.

Appellee calls attention to numerous authorities, some of them holding that, where there is a conveyance and the purchaser is in default, the relation of landlord and tenant does not exist, unless there is something in the contract indicating that such is the intention of the parties. But the contract in this case expressly provides, not only for the contract becoming void upon the purchaser's failure to pay, but it expressly provides also

that the payments that have been made shall be the property of the vendor for rents and damages.

We have many times held that the exemption laws must be liberally construed. "It is the settled policy of this court that our homestead laws are remedial and should be liberally construed to effectuate the beneficent purposes for which they were intended." *Franklin Fire Ins. Co.* v. *Butts,* 184 Ark. 263, 42 S. W. (2d) 559.

Again we said: "As we have already seen, the whole theory of our homestead laws is based upon the idea of giving a family home to debtors which is exempt from the liens of judgments and executions levied upon them except in certain specified cases. The policy of the statute is to preserve the home to the family." *Bank of Hoxie* v. *Graham,* 184 Ark. 1065, 44 S. W. (2d) 1099; *Pemberton* v. *Bank of Eastern Arkansas,* 173 Ark. 949, 294 S. W. 64.

In discussing the object of the homestead laws, it is said in 29 C. J. 782: "The object of the provisions is to provide a home for each citizen of the government, where his family may be sheltered and live beyond the reach of financial misfortune, and to inculcate in individuals those feelings of independence which are essential to the maintenance of free institutions. Also, the purpose of the homestead provision is to protect the family as an entirety, and not the individual who for the time being is the head of the family. Furthermore, the State is concerned that the citizen shall not be divested of means of support and reduced to pauperism."

If the appellant could not claim as exempt the property included in her schedule, she would be deprived of all of her property except that portion on which there existed a mortgage, which she probably could never pay.

The majority is of the opinion that the conditional sale was not an abandonment of the homestead, and that appellant is entitled to claim as exempt the 76 acres northeast of the highway and the 4 acres southwest of the highway as her homestead.

The judgment of the circuit court is therefore reversed, and the cause remanded with directions to allow

appellant's exemptions in said property, and issue a supersedeas preventing its sale under execution.