CITY NATIONAL BANK v. JOHNSON. (1)

4-3754

CITY NATIONAL BANK v. WOFFORD. (2)

4-3776

Opinion delivered March 4, 1935.

James B. McDonough, for appellant and petitioner.

Daily & Woods and Watts & Wall, for appellee and respondent.

SMITH, J. A correct understanding of the issues now presented for our decision requires a brief statement of the issues heretofore decided out of which the present litigation arose.

On July 29, 1927, C. B. Johnson and Jessie M., his wife, executed to the City National Bank, agent, twenty-five notes for a thousand dollars each, due three years after date, and by way of security therefor gave a mortgage on four separate pieces of real property in the city of Fort Smith. The bank sold these notes to the following persons: To J. A. and P. L. Riggs, $7,000; to E. N. King, $2,000; to Mrs. D. B. Taylor, $8,000; and to Mrs. Jessie Bracht, $8,000. With the consent of the bank, but without the knowledge or consent of the noteholders, the mortgagors sold one of the four mortgaged lots, referred to as the garage property, for $12,300, after the bank had, without authority, released the lien of the mortgage against that lot. $4,000 of this money was paid to and credited by Mrs. Bracht upon the notes which she had purchased, and $7,500 was credited by the bank on a debt due it by Johnson.

When the remainder of the notes fell due in July, 1930, the loan was renewed, and a new mortgage was given to secure, not only the $21,000 of the old loan then unpaid, but an additional debt of $4,000, so that the last mortgage secured the same amount as the first, and there was included in this renewal mortgage the homestead of Mrs. Johnson, which was of less value than the garage lot described in the first mortgage which the bank had wrongfully released from the mortgage lien.

In a foreclosure proceeding, the history of which is recited in the opinion on the first appeal in this case (*City National Bank* v. *Riggs*, 188 Ark. 420, 66 S. W. (2d) 293), it was adjudged that the bank was liable to the noteholders for the value of the security (the purchase price of the garage lot) which the bank had wrongfully released, and the noteholders were adjudged to be entitled to recover their *pro rata* share thereof. It was held that the inclusion of Mrs. Johnson's home in the renewal mortgage had been induced by fraud, and that the lien thereof was invalid, in so far as it purported to secure the debt of the bank; but that the mortgage was valid as to all other indebtedness there described which was owned and held by the original note purchasers. It was held that the $4,000, above referred to, which was

paid Mrs. Bracht out of the proceeds of the sale of the released lot was $76.67 in excess of her proportionate share of the sale price of the garage property.

It is recited in this first opinion that King had resold to the bank the two notes for a thousand dollars each which he had purchased, and that there was no controversy between Mrs. Johnson and the remaining noteholders, and that she conceded that they are protected by the mortgage on her homestead if the remaining property is insufficient to pay their part of the debt. With the rights of the parties thus adjudged, the decree of the chancery court ordering the foreclosure of the mortgage was affirmed.

Subsequent proceedings are recited in the opinion on the second appeal (*City National Bank* v. *Riggs*, 189 Ark. 123, 70 S. W. (2d) 574) as follows: The chancery court gave the bank a judgment against the Johnsons on the two notes which it had repurchased from King, but refused to permit it to participate in the security as to the homestead, thereby overruling the contention of the bank that it should be subrogated to all the rights of King which he had to share *pro rata* with the other noteholders in the purchase price of the garage lot. We affirmed that holding and denied the bank's claim to the right of subrogation.

It was also contended in this second appeal that the bank, having paid the Riggs and Mrs. Taylor their *pro rata* part of the proceeds of the sale of the garage lot, should be subrogated to their right *pro tanto* to share in the proceeds of the sale of the homestead; but we held against that contention. But in this second appeal it was said: "We do not understand that the court refused to give the bank a judgment against the Johnsons for the amount it paid to the Riggses and Mrs. Taylor. The decree did provide that, if the bank paid said judgments to the Riggses and Taylor, such payments shall be credited *pro rata* on their notes, and the bank was subrogated to the rights of the Johnsons in any surplus that remained from a sale of the mortgaged property after paying the noteholders, except as to the proceeds of Mrs. Johnson's homestead. Certainly the bank is entitled to

a judgment against the Johnsons for the amount of their indebtedness it is required to pay. The Johnsons owe $25,000 and interest which they do not deny. It cannot have satisfaction out of said homestead.''

It was thought that this second appeal sufficiently adjudged the rights and liabilities of the various parties, so that the proceeds of the sale under the decree of foreclosure might be distributed.

The commissioner appointed for that purpose under the authority of the decree of foreclosure, which we affirmed on both appeals, proceeded to sell the mortgaged property, and the report of sale was approved after various motions relating thereto had been heard and disposed of. The bank became the purchaser of all the property at this sale. The property referred to as Mrs. Johnson's homestead was sold for $3,100. Now, under the decrees of the chancery court and the opinions of this court affirming them, this $3,100 inured to the benefit of the noteholders, but did not inure to the benefit of the bank, for the reason, so far as the bank was concerned, that the bank had no valid mortgage on the homestead to secure its debt.

Upon consideration of the confirmation of the commissioner's report, Mrs. Johnson filed a motion in which she stated that she ''does not object to confirmation of sale (of her homestead), but asks that the sale be confirmed in her name, and the title quieted in her, and that in addition thereto she have and recover judgment of and from the defendants, City National Bank and I. H. Nakdimen, for her damages suffered during the time her property was withheld from her.''

It appears that in the original suit for foreclosure a receiver was appointed to take charge of Mrs. Johnson's homestead, and that he did so, and rented the property to a tenant and collected the rents thereon. During his possession the receiver collected $525 in rents, and he disbursed therefrom, for insurance, taxes, maintenance and repairs, the sum of $275.94, leaving in his hands the sum of $249.06, and the court rendered judgment in her favor for this balance. This appears very clearly to have been a proper order. Mrs. Johnson had been wrongfully

deprived of the possession of this property by the appointment of a receiver, and was therefore entitled to the net amount of the rents during the time of this deprivation.

The court confirmed the sale of the homestead in Mrs. Johnson, and not in the bank. It appears to be conceded that at the foreclosure sale the bank became the purchaser of the homestead at a price substantially less than its value. The effect of this order of confirmation was to require the bank to pay to the commissioner the $3,100 for the benefit of the noteholders, and to surrender the homestead to Mrs. Johnson free from the lien of the mortgage. This order is complained of as being inequitable and unjust. The court might have confirmed this sale in the bank, and then ordered the bank to convey to Mrs. Johnson; but that result has been accomplished in a less circuitous manner.

As to the equity and justice of this ruling two answers may be given: First, that the situation arose and was caused by the wrongful acts of the bank (a) in wrongfully releasing the lien of the mortgage on the garage tract, and then (b) in wrongfully including the homestead in the renewal mortgage; and, the second answer is that the order complained of accords with the opinions on the former appeals, which, whether right or not, have become and are now the law of this case.

Pending the disposition of the commissioner's report, the bank and Nakdimen filed a pleading in the nature of a supplemental complaint, in which it was alleged that Johnson and wife, in addition to their original debt to the bank, were further indebted to the bank in a note for $4,765, dated August 8, 1932, which indebtedness would be and was secured by the general indebtedness clause in the renewal mortgage. It was alleged in this pleading that the lot referred to as the homestead had never been the homestead of Mrs. Johnson, and, if so, that she had abandoned her homestead right. It was alleged that the bank was entitled "to an equitable garnishment against the proceeds, which are in the custody of the court, and they are entitled to have said interest of Jessie M. Johnson held in this court until a judgment is

obtained on said note," and the fact be determined whether the alleged homestead was in fact the homestead of Mrs. Johnson, and that, if not, it be sold in satisfaction of the judgment which would be secured on the note, there being no defense against it.

This plea on motion of Mrs. Johnson was struck from the files. Whereupon the bank brought suit at law upon the note last mentioned, and sued Mrs. Johnson as a non-resident, and caused an attachment to be levied upon the alleged homestead. The chancellor issued an order temporarily restraining the prosecution of this suit at law, which was later further heard and made permanent, and application has been made here for a writ prohibiting the chancery court from interfering with the prosecution of this suit at law. This portion of the cause may be disposed of by saying that prohibition will not lie to review an order already made. 50 C. J., page 662, chapter Prohibition, subtitle "When Writ Lies," and authorities there cited. The petition for a writ of prohibition is therefore denied.

The supplemental complaint should not have been struck from the files. The court should have determined whether the bank was entitled to the equitable garnishment prayed. It should also have determined the total indebtedness from the Johnsons to the bank. This would, at least, have prevented another suit, the one at law, the prosecution of which was enjoined. All parties were before the court, and complete and final relief should have been awarded. The reason for the court's order enjoining the prosecution of the suit at law does not appear from the decree; it probably was that the question of Mrs. Johnson's right of homestead had already been decided in the original decree. For the reversal of this decree it is very earnestly insisted that Mrs. Johnson's right of homestead has not yet been decided. It may not have been necessary, in deciding the validity of the mortgage as against the property referred to as the homestead, to determine whether it was in fact a homestead. If—as the court decided—this property had been included in the mortgage through fraudulent representations, that inclusion was void, whether the property was

a homestead or not. But, in the determination of this question of fraud, the court may have been influenced by the fact that the lots wrongfully included were a homestead. But, however that may be, the fact remains that it was expressly decided, in the original decree, which we affirmed on the first appeal, that the property was the homestead of Mrs. Johnson. This reference to the property appears in the decree: "* * * which was her separate property, and which constituted her homestead, and still constitutes her homestead." In the brief on the appeal in that case it was argued by appellants that: "The evidence in this record is insufficient to show that Mrs. Jessie M. Johnson is entitled to an Arkansas home as exempt." The opinions in both appeals, while referring to the property as Mrs. Johnson's homestead, did not discuss this question; but the affirmance of the decrees in their entirety must be treated as an affirmance of the finding of fact above quoted from the original decree.

The chancery court should make, if it has not already made, final disposition of the proceeds of the foreclosure sale in accordance with the directions of this and the former opinions, and should ascertain the total indebtedness due the bank from the Johnsons and render judgment accordingly. Whether, when this has been done, the homestead is subject to execution through its abandonment subsequent to the original decree is a question which may be decided if an execution is levied thereon.

Except as stated, the decree is affirmed, but, for the purpose indicated, the cause will be reversed for further proceedings not inconsistent with this opinion.