CITY NATIONAL BANK *v.* JOHNSON.

4-4356

Opinion delivered July 6, 1936.

*James B. McDonough* and *Joseph R. Brown*, for appellants.

*Daily & Woods*, for appellee.

MEHAFFY, J. This is an appeal from the Sebastian Chancery Court to reverse a decree of that court holding that the property described is the homestead of Jessie M. Johnson, and that she has lived continuously thereon since October 18, 1934; that the said property has been the home and homestead of Jessie M. Johnson since the title thereto was acquired by her in 1925; that the absence of Mrs. Johnson and her husband from said homestead from 1930 to 1934 was temporary only, and that during their said absence there was an abiding intent on

their part at all times to return to the homestead as a permanent home; that there was never any abandonment of said homestead either prior to or since the original decree on May 11, 1933.

The appellant says that the former decree declaring that Jessie M. Johnson was entitled to a homestead was obtained through fraud of appellees practiced on the court. Appellant also contends that appellees have abandoned the homestead since the decision of this court in which we said, referring to the former opinion in these appeals: "The opinions in both appeals, while referring to the property as Mrs. Johnson's homestead, did not discuss this question; but the affirmance of the decrees in their entirety must be treated as an affirmance of the finding of fact above quoted from the original decree.

"The chancery court should make, if it has not already made, final disposition of the proceeds of the foreclosure sale, in accordance with the directions of this and the former opinions, and should ascertain the total indebtedness due the bank from the Johnsons and render judgment accordingly. Whether, when this has been done, the homestead is subject to execution through its abandonment subsequent to the original decree is a question which may be decided if an execution is levied thereon. Except as stated, the decree is affirmed, but, for the purpose indicated, the cause will be reversed for further proceedings not inconsistent with this opinion." *City National Bank* v. *Johnson,* 191 Ark. 29, 79 S. W. (2d) 987.

A history of these cases and the facts are stated in the former opinions, and it would serve no useful purpose to restate them. See *City National Bank* v. *Riggs,* 188 Ark. 420, 66 S. W. (2d) 293; *City National Bank* v. *Riggs,* 189 Ark. 123, 70 S. W. (2d) 574.

The question of the homestead of Mrs. Johnson was involved in all these cases, and all the facts that the appellant now knows could have been known in the earlier cases. It was alleged in one of the cases that the Johnsons were nonresidents, and there is no evidence of any fraud on the court. The last case definitely settles the question of Mrs. Johnson's homestead, unless

the evidence shows that she has abandoned it. *City National Bank* v. *Johnson,* 191 Ark. 29, 79 S. W. (2d) 987.

In order to establish the fact that the Johnsons were residents of Oklahoma and not of Arkansas, appellants introduced a number of witnesses, some of them testifying that they had made a list of legal voters of Sequoyah county, Oklahoma, for the year of 1934. They obtained this list from stubs of the ballots that were used at that time. The record had been destroyed, and these lists were made by the witnesses for their private use, and showed the names of C. B. Johnson and Mrs. C. B. Johnson.

It appears, however, from the undisputed evidence, that C. B. Johnson, whose name was on the list, was the son of the appellee, and lived and voted in Oklahoma. C. B. Johnson, the husband of appellee, testified that his health was broken down, and he went to Oklahoma and opened up an agency at Sallisaw to sell Ford cars. When asked why he moved to the farm he said: ''For one reason, I had nothing else to do, and my health was broken down; so I went out there and did actual work on the farm—plowed and chopped cotton and did everything in the world I had never done before—and it improved me wonderfully.'' He testified that he did not intend to stay on the farm—that it was just temporary. His intention was to reside in Fort Smith. He also said that neither he nor Mrs. Johnson entertained any intention of deserting their home in Fort Smith for good. C. B. Johnson did not vote in Oklahoma, and stated when requested to vote, that he was not entitled to vote there, but voted in Arkansas. The evidence shows that Mrs. Johnson was approached by the candidate for sheriff, who requested that she vote for him, and she told him at the time that her vote would not be counted because she was not entitled to vote in Oklahoma. This evidence was corroborated by the testimony of the candidate, who afterwards became sheriff, and also by another witness. There is considerable evidence that Mr. and Mrs. Johnson lived in Oklahoma and lived on the farm with their son, and that Mrs. Johnson voted under the circumstances stated. It would serve no useful purpose to set

out the evidence in full. Most of the facts are set out in the former opinions.

Appellant has called attention to a great many authorities on the question of the abandonment of a homestead. In the case of *Gray* v. *Bank of Hartford,* 137 Ark. 232, 208 S. W. 302, the court said: "The abandonment of a homestead is almost, if not entirely a question of intent. This intent must be determined from the facts and circumstances of each case."

Appellant, also, refers to the case of *Harris* v. *Ray,* 107 Ark. 281, 154 S. W. 499. In that case the court said: "Numerous decisions of this court establish thoroughly the principle that a temporary removal from a homestead once impressed as such, does not constitute an abandonment." In support of this statement the following cases are cited: *Euper* v. *Alkire,* 37 Ark. 283; *Robinson* v. *Swearingen,* 55 Ark. 55, 17 S. W. 365; *Gates* v. *Steele,* 48 Ark. 539, 4 S. W. 53; *Robson* v. *Hough,* 56 Ark. 621, 20 S. W. 523; *Gazola* v. *Savage,* 80 Ark. 249, 96 S. W. 981; *Gebhart* v. *Merchant,* 84 Ark. 359, 105 S. W. 1034.

The court also said in *Harris* v. *Ray, supra*: "The Constitution of this State confers homestead rights upon a resident of the State who is a married person, or the head of a family, and when a homestead is acquired by a resident, temporary absence, even in another State, does not work an abandonment. Even where one exercised, during the time of temporary absence from the homestead, the rights of citizenship at another place, such as voting, this does not necessarily imply an abandonment of the homestead. In other words, where an actual resident of this State acquired a homestead here, the mere exercise of acts of citizenship in another State while temporarily absent from the homestead, does not necessarily amount to an abandonment, though it may be considered strong evidence of such abandonment."

To sustain this proposition the court cites the following cases: *Rand Lbr. Co.* v. *Atkins,* 116 Iowa 242, 89 N. W. 1104; *Cincinnati Leaf Tobacco Warehouse Co.* v. *Thompson,* 105 Ky. 627, 49 S. W. 446; *Minnesota Stoneware Co.* v. *McCrossen,* 110 Wis. 316, 85 N. W. 1019;

*Corey* v. *Schuster,* 44 Neb. 269, 62 N. W. 470; *Myers* v. *Elliott,* 101 Ill. App. 86.

The exemption laws must be liberally construed. We said in a recent case: "It is the settled policy of this court that our homestead laws are remedial and should be liberally construed to effectuate the beneficent purposes for which they were intended." *Bunting* v. *Rollins,* 189 Ark. 12, 70 S. W. (2d) 40. To support the above statement the case of *Franklin Fire Ins. Co.* v. *Butts,* 184 Ark. 263, 42 S. W. (2d) 559, is cited.

In discussing the object of the homestead laws, it is said in 29 C. J. 782: "The object of the provisions is to provide a home for each citizen of the government, where his family may be sheltered and live beyond the reach of financial misfortune, and to inculcate in individuals those feelings of independence which are essential to the maintenance of free institutions. Also, the purpose of the homestead provision is to protect the family as an entirety, and not the individual who for the time being is the head of the family. Furthermore, the State is concerned that the citizen shall not be divested of means of support and reduced to pauperism."

All presumptions are in favor of the preservation and retention of the homestead. When property has been impressed with the homestead character, it will be presumed to continue so until its use as such has been shown to have terminated. 29 C. J. 961.

As we have said, the exemption laws are to be construed liberally. The Constitution provides for the homestead, and, when once established, the presumption is that it continues until it is shown by the evidence that it has been abandoned. The question of homestead and residence, being a question of intention, must be determined by the facts in each case, and the chancellor's finding of fact will not be disturbed unless it appears to be against the preponderance of the evidence. We think the chancellor's finding in this case is supported by the preponderance of the evidence, and the decree of the chancery court is affirmed.