Charles DOUGAN; Stephen L. Sharp and Janet Sharp
*v.* Alice S. GRAY

94-865                                             884 S.W.2d 239

Supreme Court of Arkansas
Opinion delivered September 19, 1994

*Kitterman Law firm,* by: *Gregory S. Kitterman,* for petitioners Stephen L. and Janet Sharp.

*Jeff Rosenzweig;* and *McLeod Law Firm,* by: *Amy A. Blackwood* and *Kaye McLeod,* for petitioner Charles Dougan.

*Winston Bryant,* Att'y Gen., by: *Melissa K. Rust,* Asst. Att'y Gen., for respondent.

*Wright, Lindsey & Jennings,* by: *Wendell L. Griffen,* Attorney Ad Litem for the minor child.

ROBERT H. DUDLEY, Justice. Attorney Charles Dougan and his clients, Stephen and Janet Sharp, filed various petitions in this court seeking writs of prohibition against the Probate Judge of the Sixth Judicial District, First Division, and a writ of certiorari against the Honorable Alice S. Gray, the Probate Judge. A writ of prohibition is issued to prohibit a court from acting, while a writ of certiorari is issued to direct a judge to perform a

duty. In addition, Dougan and the Sharps attempt to appeal some of the orders of the First Division Probate Court. We consolidate all of the petitions, and issue this one opinion denying all of the petitions and dismissing the notices of appeal.

The facts giving rise to the petitions are these. An unmarried mother gave birth to a baby in February of 1994. On March 31, 1994, the mother of the baby signed an adoption document and gave custody of the baby to attorney Dougan. That document was never filed because, later that same day, the mother withdrew the consent. On May 18, 1994, the mother executed a consent to adoption and again placed the infant in the care of Dougan.

Dougan, who advertises under "Adoption Services" in the yellow pages of the Southwestern Bell telephone book and who testified that he had previously "placed" numerous babies, located a couple who wished to adopt a baby, petitioners Stephen and Janet Sharp. The Sharps reside in Tonka Bay, Minnesota. On June 28, 1994, Dougan filed a petition in the Third Division of the Pulaski County Probate Court in which he asked that he be appointed temporary guardian of the baby. That same day the Probate Judge of the Third Division appointed Dougan temporary guardian of the baby.

Later that same day Dougan filed a petition in the First Division of the Pulaski County Probate Court asking that the Sharps be allowed to adopt the baby. On July 1, only three days after the petition and consent were filed, the judge of the First Division, Judge Gray, heard testimony by the Sharps and granted an interlocutory decree of adoption. Judge Gray explained to both Dougan and the Sharps that the decree was an interlocutory one. Dougan responded that he understood it was an interlocutory order. Stephen Sharp also heard Judge Gray's explanation and said that it would be "a nice belated Christmas present." The decree provides that it is interlocutory and "shall become final six (6) months from the date hereof."

On July 8, Judge Gray gave Dougan notice that the proceedings might be deficient and that the decree might be subject to attack. The judge asked Dougan to report to the court that same day. Dougan did not respond. The judge was out of state from July 9 until Thursday, July 14. On Monday, July 18, the judge directed Dougan to report to court the next day. Dougan

reported to court on July 19, and the judge informed Dougan that the proceeding might be deficient. The core of that conference is reported as follows:

THE COURT: The first time we contacted you about coming over the child had just been in the home for a week. Now, it has been a little bit longer, about two and a half weeks, so I think — we really need to move fast on this and get it resolved.

MR. DOUGAN: All right. I will be glad to.

THE COURT: Okay. I am going to — the child is going to have to be brought back here, as well, and I am going to have to appoint an attorney ad litem for the child. I know that.

What I want to do is go through and write down the exact procedure.

The Probate Judge tried unsuccessfully to contact Dougan on July 20th and left a recorded message on his telephone answering machine telling him that the court file was being ordered sealed. The order was served on Dougan later that same day.

Later during the day of July 20th, the Probate Judges of the Third Division, where the guardianship proceeding was pending, and of the First Division, where the adoption proceeding was pending, jointly entered an order transferring the guardianship proceeding to the First Division, which is presided over by Judge Gray. Later that same day Judge Gray entered an order setting aside the interlocutory decree of adoption. Judge Gray also ordered Dougan, in his capacity as guardian, to return the baby to the court.

On July 25, a lengthy facsimile letter signed "Stephen Sharp" and "Janet J. Sharp" was received by the Probate Judge. The writer or writers of the letter stated, "We do not recognize the Court as having any jurisdiction over us or our [baby]. . . ." The baby has not been returned to this jurisdiction.

On August 8, the Probate Judge ordered Stephen and Janet Sharp to appear on August 17, 1994, to show cause why they should not be held in contempt for refusing to comply with the orders of the court. On August 12, Charles Dougan and Stephen and Janet Sharp filed petitions in this court asking a temporary

stay of the contempt proceedings and for writs of prohibition and certiorari. Dougan alleged, among other things, that he should not be subject to a contempt hearing because, if he were forced to go to Minnesota and take the child from the Sharps, he would have to commit "burglary and kidnapping under the laws of the United States, the State of Arkansas, and the State of Minnesota." The Sharps alleged that "the real reason the trial court vacated the interlocutory decree was because the adoptive parents are caucasian and the adoptee is African-American."

At the time the petitions were filed in this court the record in the lower court was sealed. This court directed that the record be lodged in this court forthwith and stayed further proceedings in the trial court until this court could determine whether petitioners were entitled to any of the extraordinary relief requested. We have examined the record, and decline to grant either a writ of prohibition or a writ of certiorari. In doing so, we express no opinion on the correctness of the rulings of the probate court. Those rulings can be challenged in an appeal.

The various petitions contain multiple counts, some made by Dougan and others by the Sharps. For clarity, we set out separately the reasons for each of our holdings.

## I.

Dougan, in one of his counts, petitions us to issue a writ of prohibition to prevent the probate court from holding him in contempt. The record shows that the probate court has not cited Dougan for contempt, and we do not know whether the probate court will cite him for contempt. It is well established that this court does not give advisory opinions, *see, e.g., Gladden* v. *Bucy*, 299 Ark. 523, 772 S.W.2d 612 (1989), or answer academic questions, *see, e.g., Neely* v. *Barber*, 288 Ark. 384, 706 S.W.2d 358 (1986). Thus, we do not reach the merits of the count.

## II.

Dougan asks that this court issue a writ of certiorari directing the trial judge to refrain from ordering him to commit a crime or else be held in contempt. Again, we do not address the issue. The trial court has not cited Dougan for contempt and has not ordered him to commit any crime.

### III.

Dougan additionally asks this court to issue either a writ of prohibition or a writ of certiorari striking the order declaring the records sealed.

### A.

A writ of prohibition is an extraordinary writ and is granted only when the lower court is wholly without jurisdiction, when there are no disputed facts, when there is no adequate remedy otherwise, and when the writ is clearly warranted. It is never issued to prevent a trial court from erroneously exercising jurisdiction. It is issued only where the trial court is wholly without jurisdiction. *Monroe Auto Equip. Co.* v. *Partlow*, 311 Ark. 633, 846 S.W.2d 637 (1993).

The probate court has jurisdiction over adoption matters. Ark. Code Ann. § 28-1-104 (1987). The probate court is vested with both inherent and statutory authority to close adoption records. Section 9-9-217(a)(2)(A) of the Arkansas Code Annotated provides that "adoption records shall be closed, confidential, and sealed unless authority to open them is provided by law or by order of the court for good cause shown." Ark. Code Ann. § 9-9-217(a)(2)(A) (Repl. 1993); *see also In re Adoption of K.F.H & K.F.H.*, 310 Ark. 53, 834 S.W.2d 647 (1992). Further, the Arkansas Freedom of Information Act provides: "It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter: . . . adoption records." The probate court had jurisdiction over the matter, and a writ of prohibition will not lie to prevent a probate court from sealing adoption records.

Dougan also asks for a writ of prohibition because the closure order is too broad. This amounts to an argument that the trial court erred in the manner in which it exercised its subject matter jurisdiction, and it is well settled that a writ of prohibition will not lie to prevent a trial court from erroneously exercising its jurisdiction. *See, e.g., Forrest City Machine Works* v. *Erwin*, 304 Ark. 321, 802 S.W.2d 140 (1991).

### B.

Dougan petitions for a writ of certiorari to direct Judge Gray to modify the order sealing the records. Certiorari lies where

there is a lack of jurisdiction or there has been an act in excess of jurisdiction that is apparent on the face of the record. It is not to be used to look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of facts, or to reverse a trial court's discretionary authority. *Juvenile H.* v. *Crabtree*, 310 Ark. 208, 833 S.W.2d 766 (1992). There is nothing on the face of this record to show that Judge Gray lacked jurisdiction to order the records closed.

## IV.

Dougan also filed a notice of appeal. Wendell Griffen, who was appointed by the probate court as attorney ad litem for the baby, filed a motion asking that the appeal be dismissed. The motion to dismiss the appeal is well taken, as there has been no final order. *See Ark. R. App. P. 2.*

## V.

The Sharps petition this court to issue a writ of prohibition to prohibit the trial court from rescinding the interlocutory order of adoption. The trial court has already rescinded the order. It is axiomatic that an appellate court cannot prohibit that which has already occurred. *See City Nat' l Bank* v. *Johnson*, 191 Ark. 29, 79 S.W.2d 987 (1935).

## VI.

The Sharps petition this court to issue a writ of certiorari directing Judge Gray to reinstate the interlocutory decree of adoption for either of two reasons. Neither merits granting the writ.

## A.

The first argument is that section 9-9-215 of the Arkansas Code Annotated, and the cases cited in the annotation, provide that an interlocutory decree cannot be set aside. The cited statute does not support the argument. In fact, the last sentence of the statute provides, "If an interlocutory decree of adoption is vacated, it shall be as though void from its issuance, and the rights, liabilities, and status of all affected persons which have not become vested shall be governed accordingly." Ark. Code Ann. § 9-9-215(b) (Repl. 1993). In addition, the decree clearly provided that it was interlocutory and would become final in six months. Most important, a trial court can set aside an order within ninety days of its entry in

order to correct any error or mistake or to prevent a miscarriage of justice. A.R.C.P. Rule 60 (b). At this stage of the adoption proceeding, the interlocutory decree awarded the Sharps is void.

### B.

The Sharps' second argument for the issuance of a writ of certiorari is that the probate court set aside the interlocutory decree "because the adoptive parents are caucasian and the adoptee is African-American." This allegation is not supported by the record, and certiorari is not available to look beyond the face of the record to determine the merits of a controversy. *Juvenile H.* v. *Crabtree*, 310 Ark. 208, 833 S.W.2d 766 (1992). Because of the sensitive nature of the Sharps' allegation, we quote at length from part of the probate court's supplemental opinion that shows the face of the record does not support the allegation.

> This court [in determining to set aside the interlocutory order] considered several matters, including those listed below.
>
> 1. Charles Dougan represented the Petitioners, Stephen and Janet Sharp, in this adoption matter. Charles Dougan also was the guardian for the child, and was responsible for ensuring that the adoption by Petitioners was in the best interest of the minor child. As guardian, Charles Dougan consented to his own clients adopting the child. At the same time, Charles Dougan received a fee of $4,200.00 from those same clients in this adoption matter. (*See* Ark. Code Ann. § 9-9-206(c), which prohibits a guardian from receiving a fee for relinquishment of a child for adoption). This Court seriously questioned whether Charles Dougan's loyalty to his clients, the Sharps, caused him to be reluctant to identify and correct deficiencies in the proceeding, and whether that loyalty conflicted with his duties as the child's guardian. Further, the Court questioned whether the adoption was in the best interests of Dougan's clients, as opposed to in the best interest of the child.
>
> 2. The Petition for Adoption may have been verified improperly. The Petition that Charles Dougan filed on June 28, 1994 included a facsimile of the signature page. Petitioners purportedly signed the Petition in the presence of Charles Dougan on June 27, 1994. At the hearing, Charles

Dougan presented another signature page which purportedly was signed by the Petitioners in his presence on a different day, June 28, 1994. At the hearing, the Court was left with the impression that they did not even arrive in Arkansas until June 30, 1994.

3. Charles Dougan, as guardian, gave his consent to adoption on June 28, 1994, the same day he requested that the hearing be held three days later. The guardian had ten days to withdraw his consent to adoption. Ark. Code Ann. § 9-9-209. The time period for withdrawal of consent must expire *before* a hearing is held on an adoption petition, and *before* a Decree of Adoption is entered. Ark. Code Ann. § 9-9-212(a) (emphasis added). However, the ten-day period for withdrawal of consent had not expired when the expedited hearing was held and the Decree of Adoption was entered on July 1, 1994. Thus, since the guardian's consent to adoption was executed on June 28, 1994, the hearing should not have been held and the Decree should not have been entered on July 1, 1994. This Court considered that Charles Dougan might not have had any intention of withdrawing his consent, which presented another problem — would Dougan have withdrawn his consent if the need had arisen, when his own clients had adopted the child and he had received a $4,200.00 fee?

4. Charles Dougan convinced the deputy chancery clerk to set the hearing very quickly although he knew certain documents needed by this Court had not been provided, namely a properly signed and verified Petition for Adoption, the Petitioner's sworn Statement of Expenditures, and the complete home study.

5. The natural mother's consent does not meet statutory requirements.

> A consent which does not name or otherwise identify the adopting parent is valid if the consent contains a statement by the person whose consent it is that the person consenting voluntarily executed the consent irrespective of disclosure of the name or other identification of the adopting parent.

Ark. Code Ann. § 9-9-208(b). The natural mother should

have named the adoptive parents in her consent document, or she should have stated she did not know who would adopt by voluntarily consenting without disclosure of the names. The natural mother's consent merely states in pertinent part:

> . . . I hereby consent to the adoption of my child *by the Petitioners* without the giving of any further notice to me. . .

The names of the adoptive parents do not appear on the natural mother's Consent to Adoption. When her consent was signed on May 18, 1994, there were no "Petitioners." The Petition for Adoption was not signed or filed until almost six weeks later.

6. The person who completed the home study never mentioned the child involved in this adoption. Nor did she ever recommend this adoption, or find the adoption to be in the best interest of this child. (The home study is discussed earlier in this opinion. That discussion will not be repeated here).

This Court did not take the decision to set aside the Decree of Adoption lightly. Pertinent caselaw was reviewed. The Supreme Court of Arkansas has consistently held that adoption statutes are strictly construed and applied. *In re Adoption of K.F.H. and K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (Ark. 1993); *In the Matter of the Adoption of Cotey Allen Parsons, a Minor*, 302 Ark. 427, 791 S.W.2d 681 (Ark. 1990). This Court concluded that several statutory provisions had not been met, as discussed earlier, and that its July 1, 1994 Decree of Adoption was void. Even after the conference with Dougan, this Court considered the options and ramifications of its inevitable decision for an additional day. This Court made the decision that it was better to correct problems with the adoption now, rather than wait for someone to challenge the adoption when the child was older.

Steps were then taken to ensure that swift action was begun to correct the problems with the adoption. The Decree of Adoption was set aside. The child needed a legal guardian. The guardianship case was transferred from Third

Division Chancery to First Division Chancery, to avoid judge-shopping and prevent duplicate proceedings as to the child's welfare and guardian. The guardianship file was sealed to prevent anyone not associated with this adoption from learning the identities of the baby and natural mother. Wendell Griffen, a competent attorney, was appointed attorney ad litem for the child. The adoption file was *not* sealed. Statutes already prohibit release of certain adoption information without the need for a court order to prohibit release. The Court reinstated Dougan as guardian, since the Decree of Adoption had been set aside and he was the last guardian appointed by Third Division Chancery Court. Although the Court was aware there were problems with Dougan's loyalties, again, this Court was hesitant to change the guardian without affording Dougan due process of law.

But for the Decree of Adoption, which had now been set aside, the child would still have been in Pulaski County. Considering issues such as the attorney/guardian's conflict of interest, his questionable candor and credibility with this Court, and the failure to comply with mandatory provisions of the Adoption Code, this Court found it necessary to be assured of the safety and well-being of the child. Dougan, in his capacity as guardian only, was ordered to return the child to Pulaski County so that the Court could be assured of its welfare, action regarding the adoption could proceed in this Court, and the baby's status could be resolved without prolonged litigation.

## VII.

The Sharps petition this court to prohibit the probate court from holding them in contempt. The right to punish for contempt is inherent in all courts. *Clark* v. *State*, 287 Ark. 221, 697 S.W.2d 895 (1985). A writ of prohibition is never issued to prevent a lower court from erroneously exercising its jurisdiction. *Statewide Health Coordinating Council* v. *Circuit Court of Pulaski County*, 287 Ark. 84, 696 S.W.2d 729 (1985). Therefore, a writ of prohibition will not lie.

## VIII.

The Sharps also ask this court to issue a writ of cer-

tiorari directing Judge Gray to refrain from holding a contempt proceeding. We decline to do so for there is nothing on the face of the record to show such a proceeding is erroneous. *See Henderson* v. *Dudley*, 264 Ark. 697, 574 S.W.2d 658 (1978).

## IX.

The Sharps ask us to issue a writ of prohibition that would prohibit the probate court from enforcing the order of confidentiality. We decline to issue the writ because a probate court has jurisdiction to issue an order of confidentiality in an adoption proceeding.

Further, the last sentence of the order of confidentiality provides: "This order is subject to review at the request of a party, in accordance with the Arkansas Rules of Civil Procedure." No one has asked the probate court to modify the order, and no one has suggested to the probate court that the order as written is beyond the jurisdiction of the court. In *Monette Road Improvement Dist.* v. *Dudley*, 144 Ark. 169, 177, 222 S.W. 59, 61 (1920) we wrote, "[A] writ of prohibition will not be issued, unless objection to the exercise of jurisdiction is made to the court in which the proceedings are pending."

## X.

The Sharps filed a notice of appeal from the order setting aside the interlocutory decree. Wendell Griffen, the attorney ad litem for the baby, moved to dismiss the appeal. Since there has been no final order in the probate court, we dismiss the appeal.

In summary, not one of the allegations contained in the various petitions provides a ground for either the extraordinary writ of prohibition or the extraordinary writ of certiorari, and the notices of appeal are premature. Accordingly, we dissolve the temporary stay of proceedings in the probate court and remand the record and the case to the probate court so that the case may proceed to trial. This case involves the adoption of a baby. It needs to be concluded. Consequently, the mandate from this court will be ordered issued seven days from this date.

Writs denied, appeals dismissed, and stay dissolved.