**In re Guy Hamilton JONES, Debtor.**

**Bankruptcy No. 92–42755M.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Aug. 18, 1995.

---

Judy Simmons Henry, Wright, Lindsey & Jennings, Little Rock, AR, for Mary Jones and Christopher Jones.

Charles W. Baker, Jr., Rose Law Firm, P.A., Little Rock, AR, for Debtor.

Richard L. Ramsay, Trustee, Arnold, Grobmyer & Haley, Little Rock, AR.

### SUBSTITUTED ORDER

JAME G. MIXON, Chief Judge.

On November 12, 1992, Guy Hamilton Jones, Jr. (debtor) filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. The debtor claimed a residence and ten acres (Meadowlake property) as an exempt home-

stead pursuant to 11 U.S.C. § 522(b)(2)(A) (1988) and the Arkansas Constitution. Ark. Const. Art. 9, § 3.

On April 3, 1993, Mary Jones and Christopher Jones (objecting creditors) filed an objection to the claim of exemption on the grounds that the homestead was urban and was, therefore, limited to one-fourth of an acre. Ark. Const. art. 9, § 5. On April 15, 1993, the objection was amended to allege that the debtor was not entitled to a homestead exemption because he had abandoned his homestead.

After a trial on the merits, the debtor was allowed an urban homestead. On September 14, 1993, the objecting creditors, pursuant to Federal Rule of Bankruptcy Procedure 9024, filed a motion for relief from the order allowing the urban homestead on the grounds of newly discovered evidence, fraud, misrepresentation, and perjury by the debtor. On July 12, 1994, an order was entered granting a new trial on the issue of abandonment because the debtor had "misrepresented critical facts by his testimony." The issue of abandonment was retried on September 2, 1994, and November 16 and 17, 1994, and the matter was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) (1988), and the court has jurisdiction to enter a final judgment in the matter.

## BACKGROUND

At the time the petition was filed, the debtor was an attorney who practiced law in Conway, Arkansas. He had an office in downtown Conway, which he had maintained since 1986. The debtor was unmarried on the date the petition was filed although he had been married twice before.[1] The Meadowlake property was acquired during the debtor's first marriage to Mary Jones. The debtor married Mary Jones in 1966 and they divorced in 1978. The debtor married a second time to Beverly Jones and in 1978 they moved into the Meadowlake property. In 1988, the debtor and Beverly Jones divorced and Beverly Jones moved from the Meadow-

lake property. In April 1991, Beverly Jones moved back to the Meadowlake property and lived with the debtor.

In the summer of 1992 the debtor and Beverly Jones began discussing the purchase of the Meadowlake property by Beverly Jones's son, Michael Ward (Ward). Ward intended to make the Meadowlake property available for Beverly Jones. Ward submitted a loan application to First Commercial Mortgage Company (First Commercial) in July 1992. On August 5, 1992, Clay and Associates, Inc., prepared an appraisal of the Meadowlake property at the request of the debtor. The appraisal indicates that it was prepared for Ward, as borrower, and the invoice for the appraisal was sent to First Commercial. A short form contract of sale was prepared by the debtor and faxed to Ward on August 10, 1992, which provided for the sale of the Meadowlake property from the debtor to Ward for $245,000.00. The contract was signed by the debtor but not signed by Ward.

Ann Leffert, a representative of First Commercial testified that Ward failed to provide all the necessary information to submit the application to the underwriter. First Commercial sent Ward a letter during October 1992 requesting certain information necessary to submit the application to the underwriter. The letter stated that if Ward did not forward the requested information by October 30, 1992, First Commercial would "consider the application terminated." Ward failed to send the requested information and on November 2, 1992, First Commercial sent Ward a notice terminating the loan application.

In October 1992, the debtor began dating Linda Reed. Beverly Jones testified that she learned of the debtor's relationship with Linda Reed in October 1992, and sometime during the week of October 24, 1992, the debtor moved away from the Meadowlake property and never returned to reside there. The debtor filed for bankruptcy on November 12, 1992. Beverly Jones testified that she removed the debtor's clothes from the Meadowlake property sometime prior to

---

**1.** Once a homestead attaches, it is not lost by subsequent divorce. *Scott County Bank v. McCraw (In re McCraw)*, 58 B.R. 175, 176 (Bankr.W.D.Ark.1985). The objecting creditors do not argue that the debtor lost his homestead because he was unmarried on the date the petition was filed.

Thanksgiving 1992, and put them in a back room in the debtor's office.

After Thanksgiving, several things occurred simultaneously. Negotiations for the sale of the Meadowlake property continued, but ultimately was not consummated because of the bankruptcy case.[2] In June 1993 the debtor advised Beverly Jones that a sale was not possible and Beverly Jones subsequently left the premises.

The trustee testified that in January 1993 he visited the debtor's office. The trustee described the back of the office as "basically a storage room," which had "a portable rack of clothing, television set, and sleeping bags." Next to this room was a bathroom with toiletries. The debtor testified that in October, November, and December of 1992 he spent the night either at the Meadowlake property or at his office. The debtor further testified that between January 1993 and July 1993 he spent the night either at the Meadowlake property, at his office, or at Linda Reed's house. The debtor also testified that in previous years he often spent the night at the office for various reasons. The debtor and Linda Reed married on July 4, 1993. Linda Reed testified that the debtor moved to her residence when they married and the debtor is residing there currently.

Much of the disputed evidence concerns details surrounding the primary events described above or concerns disagreements over what inferences should be drawn from the evidence. The debtor's testimony is so flawed that it will be given no credibility. For example, on May 7, 1993, at the first hearing regarding the abandonment of the homestead, the debtor misrepresented the facts and circumstances surrounding his occupancy of the homestead and his removal from the homestead to such a significant extent that a new trial was required. At the hearing on the motion for a new trial, the debtor declined to testify, invoking his Fifth Amendment privilege. Notwithstanding the fact that the debtor ordered appraisals on the Meadowlake property on at least two occasions, the debtor testified, while under oath at a deposition in August 1993, that he was unaware of any appraisals being made on the Meadowlake property. The debtor testified at the November 16, 1994, hearing that he did not intend to sell the Meadowlake property even though earlier that same day counsel, in open court and in the debtor's presence, discussed the wording of an order authorizing the sale of the homestead.

Despite the prevarications of the debtor, the objecting creditors have not met their burden of proving that the debtor intended to abandon his homestead on the date the petition was filed.

## DISCUSSION

■ The debtor may claim his homestead as exempt property pursuant to 11 U.S.C. § 522(b)(2)(A) (1988). Section 522(b)(2)(A) makes applicable the homestead exemptions found in article 9, section 3, of the Arkansas Constitution. Ark. Const. art. 9, § 3. Section 3 provides in relevant part that "[t]he homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon." Ark. Const. art. 9, § 3. The constitutional provision allowing homestead exemptions is to be liberally construed in favor of the person asserting the provision. *Yadon v. Yadon*, 202 Ark. 634, 638, 151 S.W.2d 969, 970 (1941); *City Nat'l Bank v. Johnson*, 192 Ark. 945, 949, 96 S.W.2d 482, 484 (1936). All presumptions are to be made in favor of the preservation and retention of the homestead. Once property becomes a homestead, it will be "presumed to continue so until its use as such has been shown to have terminated." *Johnson*, 192 Ark. at 949, 96 S.W.2d at 484.

■ Any creditor may file an objection to the claim of exemption by the debtor. Fed. R.Bankr.P. 4003(b). The objecting party has the burden of proving that the exemptions are not properly claimed. Fed.R.Bankr.P. 4003(c). The burden of proof is the same under state law. *Johnson*, 192 Ark. at 949, 96 S.W.2d at 484.

■ Here the objecting creditors are objecting to the debtor's claim of exemption on the ground that the debtor had abandoned his homestead. The Arkansas Supreme Court has stated that there is a legal presumption that the homestead right continues

---

**2.** The objecting creditors filed the objection to    the debtor's claim of exemption on April 3, 1993.

until it is "clearly shown that it has been abandoned." *Vesper v. Woolsey*, 231 Ark. 782, 785–86, 332 S.W.2d 602, 605 (1960). Whether the debtor has abandoned his homestead is "almost, if not entirely, a question of intent." *Johnson*, 192 Ark. at 948, 96 S.W.2d at 484. As long as the owner of the homestead has and retains "a fixed and unqualified intention to preserve [the property] as a homestead and to return to it," no abandonment will result. *Stewart v. Pritchard*, 101 Ark. 101, 103, 141 S.W. 505, 505 (1911).

■ There is no requirement of continuous occupation to preserve a homestead. *Vesper v. Woolsey*, 231 Ark. at 786, 332 S.W.2d at 605 (holding that renting property for two to three years while living with parents not abandonment); *Johnson*, 192 Ark. at 947–49, 96 S.W.2d at 484–85 (holding that homestead was not abandoned by living in another state for four years).

■ Bankruptcy exemptions are "fixed on the date of filing" and "only ... the law and facts as they exist[ed] on the date of filing the petition" are to be considered. *Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935, 937 (8th Cir.1990). The debtor filed his bankruptcy petition on November 12, 1992, in part because the trial of a lawsuit filed by the objecting creditors was about to commence. Whether or not the debtor decided to abandon his homestead after the petition date is not the issue here because the critical date is the petition date. *In re Peterson*, 897 F.2d at 937.

■ The objecting creditors place much emphasis on the fact that the debtor was negotiating a sale of the homestead before and after the petition date. However, these negotiations indicate an intent to abandon the homestead in the future, when a sale occurs. *Bernstein v. Held (In re Bernstein)*, 62 B.R. 545, 549 (Bankr.D.Vt.1986) (holding that "intention to sell, in the future, without more, cannot establish a present abandonment of [a] homestead"); *Brown v. People's Bank*, 150 Ark. 356, 358, 234 S.W. 616, 617, (1921) (holding that offer of sale of home "did not, of itself, constitute an abandonment thereof").

The debtor's circumstances on the date the petition was filed were in a state of transition. The debtor had not completed the necessary paperwork to conclude the negotiations for the sale of the Meadowlake property. The debtor had only recently began dating another woman when this fact was discovered by his ex-wife with whom he was living. The evidence is clear that the debtor's actions upset his ex-wife. The debtor chose to leave the homestead and decided to stay at his office. Because the meager facilities at the debtor's office cannot reasonably be construed as a permanent residence, the debtor's presence there can only be viewed as temporary. The evidence offered by the objecting creditors does not establish that on the date the petition was filed the debtor had formed the intention to abandon his homestead. The objecting creditors' objection to the debtor's claim of exemption is, therefore, overruled. The debtor is allowed an urban homestead in the Meadowlake property.

IT IS SO ORDERED.